**HEARST RADIO, Inc., v. GOOD et al.**

**No. 6858.**

Court of Appeals of the District of Columbia.
Argued May 4, 1937.
Decided May 31, 1937.

Elisha Hanson and Eliot C. Lovett, both of Washington, D. C., for appellant.

George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., and Henry R. Gower, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

This is an appeal from a decree of the United States District Court dismissing a bill of complaint filed by appellant for the specific performance of a contract for the sale of all the capital stock of the M. A. Leese Radio Corporation, owner of the transmitter and studio equipment of radio station WMAL, Washington, D. C., and lessor to the National Broadcasting Company of the right to operate that station. M. A. Leese had owned a majority of the stock of the corporation and had died intestate. His estate at the time was in process of administration. The parties defendant were Loraine Leese Good, Martin N. Leese, and William E. Leese, administrators, and Fannie I. Leese, widow, of M. A. Leese. The administrators were sued as such, and the widow was sued in her own right. The bill alleged that in January, 1935, by written agreement the defendants agreed to sell and the plaintiff agreed to buy the capital stock of the corporation; that thereafter in February, 1935, in order to carry out the purposes of the agreement plaintiff proposed and the defendants accepted a more formal agreement to which Fannie I. Leese was a party on account of her widow's right in the subject-matter of the sale; that plaintiff had secured, to the knowledge of defendants, the consent of the National Broadcasting Company to the contemplated transfer; that consent of the Federal Communications Commission depended upon delivery to it of a more formal contract, and that defendants had accepted the formal contract but had refused without justification to execute it; that plaintiff had performed all the obligations assumed by it in the agreement; and, finally, that the approval of the probate court which was contemplated by the agreement could not be obtained unless the formal agreement was executed and submitted to the court for that purpose.

Plaintiff prayed that defendants and each of them be required to make specific performance of the January contract and to execute and deliver the formal contract of February 1st, and that they be required upon payment to them of the purchase price to deliver to plaintiff all the shares of the corporation duly indorsed.

The January contract referred to in the bill was in the form of an offer by plaintiff addressed to the administrators. It embodied certain terms of the proposed sale and contained this language:

"It is understood that this agreement is to be worked out in complete detail, embodying the principal points set out herein and other points mutually satisfactory to the seller and the purchaser."

The acceptance of the administrators was in the following words—

"We, the undersigned, Administrators of the Estate of M. A. Leese, hereby accept and approve in general terms this agreement, subject to its being worked out in detail mutually satisfactory to us and to the purchaser, and subject to our approv-

al of the sufficiency of the security offered to guarantee any and all deferred payments."

During several months the parties met from time to time in an effort to make a formal contract in accordance with the January memorandum, ·but without success. And in the latter part of April, 1935, this suit was begun.

■ The decision, as we think, turns wholly upon the single question, Was there a complete contract between the parties? The suit, as we have seen, is for specific performance. In the circumstances, unless and until the terms of the agreement sued on have received the assent of both parties, there is nothing on which a court of equity can decree performance. We have said before that in a case of this nature the terms of the contract must be definitely and precisely admitted or established to justify affirmative action by a court of chancery. Cleborne v. Totten, 61 App.D.C. 69, 71, 57 F.(2d) 435. Here the trial court has found as a fact that "The matters left for future agreement under the preliminary agreement were never worked out· in complete detail embodying the points set out in the agreement and other points to be mutually satisfactory to the seller and the purchaser and therefore no binding contract resulted."

■ We have examined the record to ascertain if there is evidence to sustain this finding of the trial court. Witnesses were offered by both sides who testified to the course of negotiations between the parties. At best, the testimony is conflicting. It is entirely conceivable that the trial judge, if he had been more impressed by plaintiff's witnesses than by defendants', could have made a controlling finding in favor of plaintiff, for there is testimony tending to show an agreement between the parties. On the other hand, there is positive testimony by defendants' witnesses to the effect that no agreement was ever made, and in particular that Mrs. Leese, the widow, never consented to a sale of her interest in the corporation. In addition to this, it is perfectly clear that the January memorandum embodied only part of the terms which were to be incorporated into the concluded contract. Though there may have been mutuality as to some of its terms, it is at best doubtful if there ever was mutuality as to other essential elements which the memorandum left to future negotiations, and the find-

ings of fact resolve this doubtful question against the plaintiff's contention. The purpose of a finding of fact is to settle for the appellate court the conflicts which are inevitable in litigation such as this. And it is a well-settled and salutary rule that a finding based on conflicting testimony will be overridden only in the clearest case. Pollock v. Jameson, 63 App.D.C. 152, 70 F.(2d) 756. Here we have a situation with relation to the evidence very much like that in Lawson v. United States Mining Co., 207 U.S. 1, 28 S.Ct. 15, 19, 52 L.Ed. 65, where the Supreme Court said that if the testimony did not show the finding of fact to be correct, it failed to show that it was wrong, and under such circumstances an appellate court was not justified in disturbing the conclusion. "It is our duty," said the court, "to accept a finding of fact, unless clearly and manifestly wrong." The trial court having expressly held that no contract was ever made between the parties for the sale of the stock, and there being ample evidence to sustain ,that conclusion, we are constrained to accept that finding and to affirm the decree.

Affirmed.