### GENSBERG et al. v. KRITT.
#### Nos. 1126, 1127.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 10, 1951.

Decided Oct. 9, 1951.

Milton Dunn, Washington, D. C., for appellant.

Rolland G. Lamensdorf, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff sold defendant machinery for a dry cleaning plant which she opened in early 1948. He also loaned defendant a sum of money in order that she could make a down-payment on the machinery. He brought separate suits to recover the amount of the loan unpaid and a balance owing on the machinery. These actions were consolidated. The trial judge made a finding for the plaintiff for $200 as the amount of the loan unpaid and for $361 as the balance due for the machinery. He also found for the plaintiff on defendant's counterclaims for damages for the improper installation of a boiler. Defendant appeals the judgments entered on these findings.

Plaintiff is the local representative for the Prosperity Laundry Machinery Company. In addition to acting as agent for that company, he occasionally sells the machinery of other companies. Defendant decided to open a dry cleaning plant after she and her husband had talked with the plaintiff at a convention of dry cleaners in Atlantic City where the plaintiff was exhibiting some of his machinery. It was agreed by the parties that plaintiff would order the necessary equipment for the defendant's plant. A part of the machinery needed was actually sold by the plaintiff to the defendant. This included a spotting board, a set of "puff irons" and a "bock extractor." In one of these actions plaintiff sought to recover the balance owing on this specific equipment.

In addition, at defendant's request, plaintiff ordered a 15 H.P. gas fired high pressure steam boiler through Shurfire Fuel Products, Inc., a local heating equipment company, the president of which was defendant's husband. Plaintiff testified that this was the normal size of a boiler obtained for this type of an operation. Defendant paid Shurfire Fuel Products, Inc., for the boiler and obtained a substantial discount. She then paid plaintiff a five per cent commission for his services in procuring this piece of equipment.

When it came to installing this boiler, it was discovered that it was too tall for the one-story building in which defendant's plant was housed. In order to fit it into place, a plan was adopted whereby its twelve-inch base was cut down to six inches. Certain other changes were also made. It subsequently developed that this cutting down of the base of the boiler had reduced the amount of air which was drawn through the air openings in the base. As a result the boiler overheated causing numerous breakdowns and repairs over a period of almost two years.

Defendant employed Frederick Bloom, a maintenance engineer to install the machinery. Bloom in turn employed E. N. Hampton, another maintenance engineer, to install the boiler. Defendant paid Hampton directly for the work. However, it is the defendant's contention that the plaintiff in agreeing to procure the necessary equipment for the dry cleaning plant had also agreed to supervise its installation. She and witnesses introduced in her behalf testified that plaintiff did in fact supervise the work through his engineer Hawthorne who had been in and out of defendant's shop while the machinery was being installed. She contends that the boiler was

improperly installed under Hawthorne's supervision. She also testified that she had signed a written contract with the plaintiff, but it was not introduced in evidence.

There was conflicting testimony. Plaintiff denied that he had agreed to supervise the installation of the boiler or to have it supervised. There was a sharp difference between plaintiff and defendant and her witnesses. Defendant urges in effect that her account of the transaction should have been accepted by the trial judge. She urges too, on the same grounds, that her counterclaim should have been allowed. Plaintiff testified that Hawthorne was employed by him as an installation engineer for supervising the installation of Prosperity Company machinery and that he had been in defendant's plant with authority to do nothing else. It is to be noted that the boiler ordered was not one made by the Prosperity Company for whom the plaintiff was a local agent but rather one made by another manufacturer. Hampton testified that he had no contract with the plaintiff to install the boiler, that he was paid directly by defendant and that any specific instruction he had received as to the installation was given by Bloom and not by Hawthorne. Bloom and Hawthorne did not testify at the trial.

Thus a question of fact was presented to the trial judge, sitting without a jury, for his determination. But in his written findings of fact the trial judge accepted plaintiff's story. He found that plaintiff had not agreed to supervise the installation of the boiler and that he had nothing to do directly or indirectly with its installation, and therefore was entitled to collect the amounts owing and was not liable on the counterclaim which was based entirely on damages resulting from alleged faulty installation. As has been often said, we may not pass on the credibility of witnessses or weigh their testimony. There was substantial evidence to support the findings. Under these circumstances we must affirm the judgments of the trial court.[1]

Affirmed.

1. Hearst Radio, Inc., v. Good, 67 App.D. C. 250, 91 F.2d 555; Potts v. Catterton, D.C.Mun.App., 82 A.2d 133; Code 1940, Supp. VII, 11–772(c).