**D.C. AREA COMMUNITY COUNCIL, INC., Appellant,**

v.

**B. JACKSON, III, et al., Appellees.**

**No. 12551.**

District of Columbia Court of Appeals.

Argued March 15, 1978.

Decided April 27, 1978.

**186**

Henry Lincoln Johnson, Jr., Washington, D. C., for appellant.

Michael A. Schuchat, Washington, D. C., for appellees Syphax, Thomas and S & T Associates.

Steven A. Michael, Bethesda, Md., with whom Jack C. Sando, Bethesda, Md., was on the brief, for appellees Jackson and Riviere.

Before KELLY and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

## PER CURIAM:

This case arose out of the sale of Bellevue Gardens, a complex of apartment buildings located in Southwest Washington, D.C. Appellant, plaintiff below, had expressed interest in purchasing the property, and to this end had entered into negotiations with the sellers, defendant-appellees Jackson and Riviere, general partners in Bellevue Gardens Associates (hereinafter Bellevue).

Bellevue appeared eager to make the deal. It was faced with rent strikes, an overdue mortgage, and overdue utility bills, and was anxious to be rid of the property and its attendant liabilities. In a letter to Bellevue dated November 14, 1975, appellant stated that it would contract to buy the subject property if it were financially able to assume Bellevue's responsibility on the outstanding mortgage, in excess of $1,000,-000, from Perpetual Federal Savings and Loan Association. A second contingency expressed in the letter was appellant's ability to reach an agreement with Pepco with respect to the existing utility obligations. At appellant's request, officers of Bellevue signed the letter and returned it.

Before appellant could make arrangements to satisfy the two contingencies of the prospective sale, Bellevue sold the property in question on December 12, 1975 to defendant-appellees Syphax and Thomas, general partners in S & T Associates (hereinafter S & T).

Appellant filed suit in Superior Court on September 9, 1976, alleging that its November 14, 1975 letter to Bellevue constituted an enforceable contract for the sale of the subject property. Appellant prayed that if the court found that, at the time of sale from Bellevue to S & T, S & T knew of the contract between appellant and Bellevue, that the court grant specific performance requiring S & T to convey the illegally acquired property to appellant. Appellant prayed, alternatively, that if the court concluded that S & T was without knowledge of the prior transaction, the court award appellant $4,000,000 in damages against Bellevue.

On October 29, 1976, S & T cross-claimed against Bellevue, disclaiming knowledge of any prior transaction between Bellevue and appellant. S & T sought from Bellevue both indemnity and $25,000 damages said to have been the product of a cloud on S & T's title to the subject property resulting from the instant litigation.

On November 10, 1976, S & T moved for summary judgment; Bellevue did the same on February 23, 1977. The trial court entertained these motions and on July 12, 1977, granted, by memorandum order, summary judgment to both appellees against appellant, and to Bellevue against S & T insofar as the latter's cross-claim sought indemnity. The trial court reserved decision on S & T's $25,000 damage claim against Bellevue to which appellant is not a party and which is not in issue on this appeal.

Appeal is taken in timely fashion from the summary judgment order. Appellant contends that the letter of November 14, 1975, signed and returned by appellee Jackson on Bellevue's behalf, constituted an agreement to agree, enforceable as a contract between the parties. The trial court recognized this as the threshold question below, one of first impression in this jurisdiction. It held that the letter was not intended to be a binding contract at the time of signing, and that it did not, in any event, meet the prerequisites for the enforceability of an agreement to agree as a contract because it failed to set out in final form all terms and conditions, leaving nothing to future negotiations. The trial court observed:

Indeed the discussions of financing were so tenuous and so dependent on a variety of possibilities that . . . the letter is really nothing more than a projection of hoped for possibilities.

. . . It is apparent that the November 14, 1975 letter is nothing more than an agreement to enter into a contract if, and when, plaintiff Corporation was able to make certain financial arrangements so as to be in a position to execute a contract.

■ Reference to the letter and to the most basic authorities supports the trial court's finding. It is well settled that

parties [may] make an enforceable contract binding them to prepare and execute a subsequent documentary agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called "contract" to make a contract is not a contract at all. [1 A. Corbin, Contracts § 29 (1963) (foot-

notes omitted). *Accord* 17 Am.Jur.2d *Contracts* § 26 (1964); *Joseph v. Doraty*, 144 N.E.2d 111, 113 (Ohio App.1957).]

In the instant case, the trial court concluded that appellant's intention, memorialized in the letter of November 14, 1975, to attempt to assume Bellevue's liabilities, did nothing more than set out "a series of conditions precedent before any obligation can even arise." The trial court observed that subsequent to Bellevue's signing of the letter:

Plaintiff here did, essentially, nothing for almost a month. They visited Pepco, and discovered the size of the outstanding bill, and they visited Perpetual and discovered that they could not simply assume the mortgage, but would instead have to pay some $36,000 cash just to be considered for assumption of the mortgage. In short, as the November 14 letter indicates, plaintiff Corporation, without any assets, and in existence for only two weeks prior to November 14, recognized that it would be faced with the need to try to work out some sort of arrangements for the payment of some $85,000 just to be in a position to enter into a binding contract. And that could only come about if second trust money could be found. Clearly, if the sellers had gone to court, relying on the November 14, 1975, letter as a contract, to force the plaintiff here to go through with the sale, the plaintiff simply could not have done so, nor can it be imagined that they would have assented to the idea that the letter of November 14 was a contract which bound them to perform.

The trial court noted that the letter contained no time limits for settlement or payment, significant because time was of the essence insofar as the beleaguered sellers were concerned. The letter left unresolved the question whether the sellers or buyer would make repairs necessary to bring the property up to building code standards. The letter failed to discuss who would continue as party plaintiff in tenant-related

Superior Court litigation, and to whom the furniture, equipment, and machinery on the premises would go.

■ The letter was lacking in a variety of essential terms, was in no way a memorial of an agreement already reached, and was properly rejected as a contract on which specific performance could be granted.[1] The judgment in appellees' favor is

*Affirmed.*

1. We have examined and find unmeritorious appellant's alternative contention, not addressed at oral argument, that specific performance should have been granted under the doctrine of promissory estoppel. Restatement of Contracts § 90 (1932), defines promissory estoppel as "a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action. [It is] binding if injustice can be avoided only by enforcement of the promise." The November 14 letter included no promise on which to base promissory estoppel. Moreover, as the trial court observed, there was in any event no definite and substantial action or forbearance on appellant's part as a result of the November 14 letter.