GEORGETOWN ENTERTAINMENT CORPORATION, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 83–802.

District of Columbia Court of Appeals.
Argued June 4, 1985.
Decided Aug. 5, 1985.

Stephen O. Hessler, Washington, D.C., for appellant.

Lutz Alexander Prager, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before NEBEKER and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.

NEBEKER, Associate Judge:

This appeal presents one issue: whether documents exchanged by the District of Columbia and appellant Georgetown Entertainment Corporation (GEC) constitute a binding lease. The parties never executed a formal lease. GEC contends, however, that, read together, the existing documents show a meeting of the minds on all material terms and express the intent of the parties to be presently bound. After a non-jury trial, the trial court determined that they do not. We find no error and affirm.

I

In February 1977, the District published a request for proposals for leasing the Georgetown Incinerator, classified in 1976 as "surplus property" by the District's Department of General Services. The request expressly reserved the right of the District to reject all proposals and required any applicant whose proposal was accepted to execute a lease. Accompanying the request for proposals was a form draft lease. The draft lease specified no rent, lease terms, projected use, or date for the first rent payment. The applicant was to supply some of these terms as a part of the proposal while others would be worked out through negotiation with the District. In its proposal GEC offered to pay $42,000 rent per year plus 3% of gross annual sales above $1,000,000 for a lease term of 15 years plus three optional renewal periods, each for five years. GEC proposed to use the Incinerator for a cabaret dinner theater.[1]

During the two years after GEC submitted its proposal, GEC and the District engaged in intermittent negotiations, punctuated by correspondence between the parties. In July 1981, the District wrote Mr. Mokhless Al-Hariri, the President of GEC, of its intent to sell, rather than lease, the Incinerator property. GEC filed suit in September 1981, seeking specific performance of the alleged contract to lease, or, in the alternative, damages for money spent in the preliminary research and development. GEC relies upon two letters, one from Mayor Marion S. Barry, Jr., dated March 16, 1979, and the other from William T. Jones, Alternate Contracting Officer for the District, dated August 2, 1979, to show that there had been agreement on all material terms and that the District had communicated its intent to be bound. GEC further argues that, because it had changed position in reliance on the District's communications by spending approximately $94,000 on research and planning, the District is estopped from denying the existence of the contract. In granting judgment to the District, the trial court rejected these contentions. We perceive no error.

---

1. GEC accompanied its proposal with a $7,000 deposit check. The District has refunded the deposit.

# 590

## II

For an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound. *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 546–47 (D.C. 1981). GEC contends, first, that the District had agreed to all material terms and that, by finding that the parties had engaged in ongoing negotiations but had not reached final agreement, the trial judge erred. We disagree.

 The interpretation of contract documents is a question of law. *United States v. McShain, Inc.*, 103 U.S.App.D.C. 328, 330–31, 258 F.2d 422, 424–25, *cert. denied*, 358 U.S. 832, 79 S.Ct. 52, 3 L.Ed.2d 70 (1958) (interpretation of contract documents involves issues of law as to which the "clearly erroneous" standard of review does not apply). However, what the parties deem to be the material elements of their agreement—either set forth in or absent from those documents—is largely a question of fact.[2] On their face, the documents in the record reveal that the parties had reached no agreement as to the commencement date of the lease or the time when rent would be due.[3] It is not altogether certain whether the parties had reached agreement as to the lease term. Although the August 2, 1979, letter from Mr. Jones states that the District had found acceptable the term of 15 years plus two five-year option periods—proposed by Mr. Al-Hariri in conversations with another contracting officer—GEC never confirmed that understanding in writing. According to the District, these terms, absent from or ambiguous in the documents, are material; and the trial judge did not err in so finding.

 Our review of a finding of fact by the trial court is limited. We may reject it only if "clearly and manifestly wrong," *Hearst Radio, Inc. v. Good*, 67 App.D.C. 250, 251, 91 F.2d 555, 556 (1937), or without evidence to support it. D.C.Code § 17–305(a) (1981). Evidence in the record shows that the District preferred to sell rather than lease surplus property, that it considered leasing only as an interim measure to realize income from the property while sale value was temporarily depressed during rezoning, and that for these policy reasons the term of the lease was highly important to the District. There was substantial evidence from which the trial court could conclude that length of the lease and its starting date (hence its termination date) were material terms. Both the documentary evidence and testimony at trial support its conclusion that the parties had not reached essential agreement regarding the terms.[4] *See D.C. Area Community Council, Inc. v. Jackson, supra* note 2, 385 A.2d at 187 (in sale of land, "letter contained no time limits for settlement or payment"; missing terms were sufficiently material to prevent formation of contract).

## III

GEC contends, second, that letters from Mayor Barry and Alternate Contracting Officer William T. Jones establish the District's present intent to be bound. *See Edmund J. Flynn Co. v. LaVay, supra,* 431 A.2d at 546–47. An examination of the

---

**2.** "If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made." *D.C. Area Community Council, Inc. v. Jackson*, 385 A.2d 185, 187 (D.C.1978) (quoting 1 A. Corbin, Contracts § 29 (1963)).

**3.** Testifying at trial, Mr. Al-Hariri acknowledged that no agreement had been reached as to the date to be inserted into paragraph 23(f) of the draft lease, specifying the latest date by which rent would be due.

**4.** GEC contends that a formula exists to determine the date the first rent payment is due. Application of that formula, however, requires use of the date of the lease. GEC argues that August 2, 1979, should be considered the lease date. Because we perceive no error in the trial court's finding that the parties entered no lease on that date, discussed *infra*, we must conclude that no agreement had been reached regarding the date of the first rent payment. Moreover, we are not persuaded by the record before us that the District invariably followed the formula proffered by GEC.

relevant documents reveals that the trial judge did not err in concluding otherwise.

■ Mayor Barry's letter to Mr. Al-Hariri, dated March 16, 1979, states:

The D.C. Government has now concluded its review of your proposal to lease the Georgetown Incinerator and decided that this is the appropriate disposition of this property. However, we must first notify the pertinent Advisory Neighborhood Commissions and give them time to comment. Mr. Sam D. Starobin, the Director of General Services, will be in touch with you on the preparation of formal lease documents in the near future.

On its face, the letter refers to a step required before the District could bind itself—the presentation of the proposal to the Advisory Neighborhood Commissions as mandated by D.C.Code § 1–261(b)–(d) (1981). Thus while the letter does reflect the District's interest in binding itself in the future, it contains a condition which had to be met before it could be bound.

Moreover, the record reveals that the letter from the Mayor was sent while the parties were still negotiating the total maximum term. As late as June 28, 1979, the District's planning office in its recommendation to the contracting officer of Mr. Al-Hariri's proposal over that of a rival bidder, speaks of the "Al-Hariri [proposal]" as being for "15 years + 3–5 years renewal options maximum 30 years." Evidence in the record shows that the District considered a shorter maximum term essential. An Opinion of the Corporation Counsel, dated July 13, 1977,[5] to the Director of the Department of General Services emphasized that District policy favored sale over long-term leasing of the Georgetown Incinerator based on an analysis of D.C.Code §§ 9–301 (1973), 1–144(a) (Supp. III 1976), the provisions governing the proposals

when they were initiated. The Opinion states: "Inasmuch as the request for proposals in this matter envisions a potential lease of as long as thirty years, I am constrained to advise you that unless a substantial justification for such a lease term can be provided and approved by this Office, the validity of such a lease would be questionable." Because the parties had not agreed regarding the length of the term at the time the Mayor wrote to Mr. Al-Hariri, the Mayor's letter cannot be considered a binding acceptance of GEC's offer. *Edmund J. Flynn Co. v. LaVay, supra,* 431 A.2d at 546–47; *D.C. Area Community Council, Inc. v. Jackson, supra,* 385 A.2d at 187.

■ Similarly, the August 2, 1979, letter from Mr. Jones cannot reasonably be read to bind the District. Although the August 2 letter advises GEC that the Advisory Neighborhood Commission is being informed of an "intent to accept," the letter also anticipates further negotiations: "[o]nce we have a meeting of the minds on the final lease document, we will submit it to the Corporation Counsel for the necessary legal approval."[6] The letter speaks of preparation of a lease for Mr. Al-Hariri's review "[i]n anticipation of proceeding with the lease *after* the legally required 30 days notice to the [Advisory Neighborhood Commission] has passed." (Emphasis supplied.) As is evident from the language of the letter, the trial judge did not err when he concluded that the document did not bind the District.

### IV

■ Finally, GEC argues that the District is estopped to deny the existence of a lease, and that therefore GEC is entitled— if not to specific performance—to reimbursement for research and development

---

5. The District mailed a copy of the Corporation Counsel's Opinion to Mr. Al-Hariri on August 17, 1977. He was therefore on notice regarding the government's position on long-term leasing of its surplus property.

6. Paragraph 26 of the draft form lease, upon which GEC also relies, permits operation under an interim lease pending final approval by the Corporation Counsel. That provision, however, is triggered only when there has been a meeting of the minds regarding all material terms.

expenses. We disagree. In order to establish promissory estoppel against the government, the party asserting the estoppel must show that the government "made a promise, that [the party] suffered injury due to reasonable reliance on the promise and that enforcement of the promise would be in the public interest and would prevent injustice." *District of Columbia v. McGregor Properties, Inc.*, 479 A.2d 1270, 1273 (D.C.1984). Here, the trial judge found that there had been no promise that could give rise to estoppel. Our determination that he did not err in so concluding ends our inquiry. *See United States Jaycees v. Bloomfield*, 434 A.2d 1379, 1384 (D.C.1981); *D.C. Area Community Council, Inc. v. Jackson, supra*, 385 A.2d at 188 n. 1 (demonstration that there has been a promise is prerequisite to assertion of promissory estoppel).

Nor can we find fault with his determination that GEC had presented no satisfactory evidence of expense in reliance. "Evidentiary rulings fall within the sound discretion of the trial judge and ordinarily do not serve as the basis for reversal absent an abuse of discretion and serious injury to the aggrieved party." *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C.1984) (citing *Edmund J. Flynn Co. v. LaVay, supra*, 431 A.2d at 550). Here, the trial court heard evidence that GEC did not apply for a license to begin work on the Incinerator; paid no rent; had incurred no construction expenses that could be applied toward rent; had not taken out insurance, furnished performance bonds, engaged a construction contractor, nor done maintenance on the building. The sole evidence of expenditure was a summary sheet prepared by GEC's sister corporation, the Georgetown Design Group.[7] GEC offered neither bills nor canceled checks from independent vendors. As finder of fact, the trial judge could conclude that the summary sheets were unreliable evidence of actual expenditure because of the close rela-

tionship between the corporations and because no canceled checks were presented to show payment. *See Washington v. District of Columbia*, 429 A.2d 1362, 1369–70 (D.C.1981) (en banc) (credibility is issue for trier of fact).

*Affirmed.*

---

7. Mr. Al-Hariri signed as President of the *Georgetown* Design Group when he wrote to Mayor Barry on March 21, 1979.