Harvey ROSENTHAL and Radishes & Rainbows, Inc., Appellants,

v.

NATIONAL PRODUCE COMPANY, INC., Appellee.

NATIONAL PRODUCE COMPANY, INC., Appellant,

v.

Harvey ROSENTHAL and Radishes & Rainbows, Inc., Appellees.

Nos. 88–226, 88–274.

District of Columbia Court of Appeals.

Argued Feb. 20, 1990.
Decided April 18, 1990.

---

Arthur G. Kahn, Washington, D.C., for appellants/cross-appellees.

Diana M. Savit, Washington, D.C., for appellee/cross-appellant.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

This case arises from a dispute as to whether the dominant individual in a financially ailing corporation is responsible for payment of certain of its debts. Appellant Harvey Rosenthal, a restaurateur who owned all of the stock of a corporation with the alluringly refreshing name of Radishes & Rainbows, Inc. (R & R), appeals from a decision of the trial judge which held him personally liable, as the agent of an undisclosed principal, for produce delivered to the restaurant by a supplier, appellee National Produce, Inc. (National Produce). National Produce asks us to affirm the judgment but, claiming as an alternative ground for recovery that R & R's corporate identity should have been disregarded, conditionally cross-appeals [1] from a ruling by the motions judge denying in part its motion to compel discovery, and from a decision of the trial judge refusing its request, made at the conclusion of the trial, to amend its complaint to conform to the evidence. National Produce maintains that the trial judge should not only have allowed the requested amendment, but should also have pierced the corporate veil.

Because the relationship between Rosenthal and R & R [2] on the one side and National Produce on the other was not reduced to writing or otherwise adequately defined, both the trial court and this court have been compelled to wrestle with some fundamental and difficult questions. These include whether National Produce's agreement was with Rosenthal or with R &

---

1. The cross-appeal is conditional because, were we to affirm we would have no occasion to reach the issues which the cross-appeal presents.

2. For convenience, we sometimes refer to Rosenthal and R & R as appellants, although both are in fact also cross-appellees in No. 88–274.

R; whether there was a single "umbrella" agreement or a series of separate contracts, each coinciding with an individual delivery; whether and when Rosenthal disclosed that he was acting as an agent for R & R; whether R & R was anything more than Rosenthal's "alter ego"; and whether the disputes over discovery and amendment of pleadings were correctly resolved.

An ounce of prevention is worth a pound of cure. Most or all of the problems now presented might have been forestalled if the character of the arrangement between the parties had been adequately defined at the outset. This did not occur, however, and the dispute having gone through discovery and trial, we find ourselves compelled, nearly six years after the delivery of the last radish, to remand for further proceedings, both on Rosenthal's appeal and on National Produce's cross-appeal. Unfortunately, the complexities are such that the end still may not be in sight.

## I

### THE FACTS

R & R was incorporated in 1978 and began operating the restaurant in 1979. Shortly before the facility opened, Rosenthal visited National Produce and spoke with the company's president, Boris Ballard, about buying produce for the establishment. On behalf of National Produce, Ballard agreed that Rosenthal would place orders with National Produce on a daily basis, that the merchandise would be delivered to the restaurant, and that the National Produce driver would be paid for each day's deliveries. Ballard intended to have National Produce deal with Rosenthal on a daily cash basis. According to Ballard, "there was never an open account for Harvey Rosenthal."

When Rosenthal first spoke with Ballard, he stated that he would take care of all the bills. According to Ballard, Rosenthal did not disclose that he was acting on behalf of a corporation, and the form of Rosenthal's business was not discussed. Rosenthal testified that "truthfully I don't remember"

whether he disclosed to Ballard that R & R was incorporated, but he added that he paid bills with corporate checks and that his suppliers "all knew we were a corporation. We weren't hiding anything." In any event, Ballard and other National Produce employees referred to the new account as "Radishes and Rainbows," but did not allude to any corporate identifier.

At first, Rosenthal paid National Produce's bills daily and in cash. After a short time, Rosenthal began to encounter difficulties in making daily payments, and he asked National Produce to deliver daily, but to accept payment weekly. National Produce agreed to this new arrangement. The revision in the manner of payment did not, however, enable Rosenthal to pay the restaurant's obligations to National Produce on a current basis. In September 1984, R & R went out of business and liquidated its assets.[3] At that time, National Produce was owed $18,667.32 for produce which had been received by the restaurant but for which neither Rosenthal nor R & R had paid.

When R & R stopped operating, it carried on its corporate books loans to Rosenthal totaling at least $45,370.00. Although Rosenthal testified that he may have repaid those loans in part, R & R's books do not reflect any such repayment.

Beginning in 1984, and continuing into early 1985, National Produce attempted to reach an agreement with Rosenthal and R & R which would have provided for payment over time of the sums owed to National Produce. Some time during these negotiations, disclosure was concededly made to National Produce that R & R was a corporation and that Rosenthal claimed to be acting on its behalf. When the parties were unable to resolve their dispute informally, National Produce sued Rosenthal and R & R, alleging breach of contract by each defendant, fraud by Rosenthal in the inducement of the agreement, and breach of Rosenthal's personal guarantee to answer for R & R's debt. National Produce later amended its complaint to include a

---

**3.** As the trial judge put it, Rosenthal was "fighting for his financial life."

claim alleging that R & R had fraudulently conveyed assets to Rosenthal.

## II

### THE TRIAL COURT PROCEEDINGS

Following some spirited barristerial shadow-boxing over discovery before Judge von Kann, *see* pp. 373–375, *infra*, the case came before Judge Dixon for trial by the court without a jury. National Produce contended that there was only a single 1979 contract between the parties. Its attorney described this contract as an "umbrella agreement: we will deliver produce; you will pay us."[4] Maintaining that at the time the agreement was reached, Rosenthal had not disclosed that he was acting on behalf of a corporate principal, National Produce argued that he was therefore personally responsible for payment. Rosenthal contended, on the other hand, that there was never a meeting of the minds in 1979 as to the terms of an agreement, and that "if there is a contract here, the contract would occur with regard to every purchase made by the corporation of produce from plaintiff." Appellants' attorney maintained that

> whatever contractual claim the plaintiff might have, derives [from and is] based on these deliveries to the corporation, and it would be the corporate debt, if any, that would have been proven. Certainly none on the part of Mr. Rosenthal, because again there is no evidence that he ever originally entered into an agreement respecting the terms of payment of these deliveries.

It was Rosenthal's position that disclosure was made prior to each delivery for which National Produce has not been reimbursed.

At the conclusion of the trial, the judge made oral findings favorable to National Produce with respect to Rosenthal's per-

sonal liability. The judge found that "the business arrangement between Mr. Rosenthal and National Produce, as it commenced in 1979, just happened to be a very loose business arrangement." He nevertheless apparently concluded that the critical question with respect to Rosenthal's personal liability was whether Rosenthal had disclosed in 1979 that he was acting for R & R. With regard to that issue Judge Dixon ruled as follows:

> During the dealings with National Produce that extended from 1979 through 1984, it appears that other than the bounced checks that came to the attention of Mr. Laifsky [5] and National Produce, that they were dealing with Mr. Harvey Rosenthal in the business that he had started. Indeed, the Court would conclude based on all of the evidence, that there was no reasonable basis upon which National Produce could have concluded that Harvey Rosenthal was only bargaining on behalf of Radishes and Rainbows, Inc., and there was no reasonable basis upon which National Produce could have concluded, at least through early 1984, that Mr. Harvey Rosenthal was not running his business as a sole proprietorship.

> Therefore, based on all of the evidence that is before the Court, the Court concludes, based on those findings of fact, and concludes as a matter of law, that there was no meeting of, quote, corporate minds, and that Mr. Harvey Rosenthal is personally liable for the deliveries that were made by National Produce.

Judge Dixon also held R & R liable on a *quantum meruit* theory for the goods for which no payment had been made, and entered judgment against both defendants for $18,667.32.

The judge found the evidence insufficient to show a personal guarantee of the debt

**4.** This claim of a single "one time" agreement was something of a refinement over the allegations in the Amended Complaint. There, National Produce alleged that "during a period of approximately five years ending in September of 1984, defendant Rosenthal personally contacted plaintiff and agreed to purchase produce from plaintiff on open account." This is something less than a ringing statement of a claim

that there was only one contract which was negotiated in 1979. Moreover, as we have noted, Ballard's testimony did not substantiate the claim that Rosenthal had an "open account."

**5.** Mr. Laifsky was an officer of National Produce who testified at trial.

by Rosenthal or either fraud or a fraudulent conveyance on Rosenthal's part.[6] He also declined to permit National Produce to amend its complaint to include a prayer that the court pierce R & R's corporate veil.

Rosenthal now appeals from the judgment entered against him, contending that he should not have been held personally liable[7] for the corporate debt. National Produce cross-appeals, contending that Judge von Kann impermissibly restricted its discovery and that Judge Dixon erred in refusing to permit it to amend its complaint after the evidence had been presented and in declining to pierce the corporate veil.[8]

## III

### ROSENTHAL'S APPEAL

 "An agent who enters into a contract without disclosing his principal is personally liable on it." *Resnick v. Abner B. Cohen Advertising, Inc.*, 104 A.2d 254, 255 (D.C.Mun.App.1954). To avoid liability, he must disclose both the fact of his agency and the identity of his principal. *American Ins. Co. v. Smith*, 472 A.2d 872, 874 (D.C.1984). The agent must act promptly, for disclosure of the agency after execution of the contract will not relieve the agent of liability. *Id.* at 875; *McNeill v. Appel*, 197 A.2d 152, 153 (D.C.1964). Whether proper disclosure has occurred is a question of fact which depends on all of the surrounding circumstances. *Smith, supra*, 472 A.2d at 875.

If, as National Produce contends, there was only a single 1979 "umbrella" agreement in this case, then it was incumbent upon Rosenthal to make effective disclosure before that agreement was completed.

If, on the other hand, there were as many contracts as there were orders or deliveries, *see* D.C.Code § 28:2–206(1)(b) (1981), then Rosenthal's liability turns on whether National Produce received notice of his agency with regard to each individual contract.

 The trial judge, without expressly so stating, apparently found that although the business arrangement negotiated in 1979 by Ballard and Rosenthal was a very loose one, and although there was no "corporate meeting of the minds," there was nevertheless an enforceable contract in 1979 between National Produce and Rosenthal.[9] We cannot agree. According due deference to the trial judge's presence "on the scene" and his opportunity, superior to ours, to obtain the "feel" of the case, we are nevertheless unable to find in the record the requisite evidence of an enforceable agreement.

 In a passage which could have been composed with this case in mind, Professor Corbin has written that

[a] court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to

---

6. National Produce does not challenge these findings on appeal.

7. R & R also noted an appeal but did not actively prosecute it, presumably because it has no assets. No arguments on its behalf were presented either in the briefs or in oral argument. Accordingly, we affirm the judgment against R & R.

8. National Produce's cross-appeal would, of course, be moot were we to affirm the judgment against Rosenthal.

9. The determination whether an enforceable contract exists, when based on the contract documents, is a question of law and the "clearly erroneous" rule is inapplicable. *Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C.1985). Except insofar as it implicates the trial judge's assessment of the credibility of witnesses, we think that the question whether oral representations constitute a contract is likewise one of law.

prevent the creation of an enforceable contract.

1. A. CORBIN, CORBIN ON CONTRACTS § 95, at 394 (1963); see Stansel v. American Sec. Bank, 547 A.2d 990, 993 (D.C.1988), cert. denied, —— U.S. ——, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989). A contract must be sufficiently definite as to its material terms (which include, e.g., subject matter, price, payment terms, quantity, quality, and duration) that the promises and performance to be rendered by each party are reasonably certain. J.D. CALAMARI & J.M. PERILLO, THE LAW OF CONTRACTS, § 2–13, at 43–44 & n. 17 (2d ed. 1977). That test is met when the contract provides a sufficient basis for determining whether a breach has occurred and for identifying an appropriate remedy. See RESTATEMENT (SECOND) OF CONTRACTS § 33 (1981). As the court stated in Robinson v. Gardiner, 196 Md. 213, 216, 76 A.2d 354, 356 (1950):

> If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties. Such a contract cannot be enforced in equity nor sued upon in law.

■ The requirement of definiteness cannot be pushed to extreme limits. CALAMARI & PERILLO, supra, at 44 n. 18. All agreements have some degree of indefiniteness and some degree of uncertainty. 1 CORBIN, supra, § 95, at 396. "All the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy." V'Soske v. Barwick, 404 F.2d 495, 500 (2d Cir.1968), cert. denied, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969). Reasonable definiteness in the essential terms of a purported contract must, how-ever, be a precondition for its enforceability, for otherwise the court has no adequate means of identifying the obligations which it should enforce.

In the present case, the requisite elements are lacking. As counsel for National Produce told the trial judge, the "contract" was "we will deliver produce; you will pay us." There was little more. The evidence shows that following the discussions between Ballard and Rosenthal in the summer of 1979, Rosenthal began to place orders with National Produce, usually on a daily basis, and that this continued until the demise of the business in September 1984. There is no evidence, however, that the 1979 understanding obligated Rosenthal to purchase produce only from National Produce, or that he was obliged to place periodic orders with National Produce for any length of time, either definite or indefinite.[10] Moreover, there is no indication that National Produce was bound to deliver produce to R & R whenever Rosenthal placed an order. For aught that appears in the record, after Rosenthal reimbursed National Produce for a particular delivery, either party was free to terminate the relationship. There was no stated agreement as to price, quantity, quality, or duration.[11] See CALAMARI & PERILLO, supra, § 2–13, at 43 n. 17. Under these circumstances, we are compelled to conclude that there was no contract formed in 1979, and that Rosenthal's failure to disclose his agency to National Produce during his conversations with Ballard in 1979 is not decisive with respect to his liability.[12]

■ The foregoing conclusion does not necessarily mean that Rosenthal is not responsible for the payment of any of the goods delivered by National Produce. The judge found that at least through early

---

**10.** National Produce has not contended, nor could it reasonably argue, that the 1979 "umbrella" agreement was enforceable as a "requirements contract." See Annotation: Requirements Contracts Under § 2–306(1) of Uniform Commercial Code, 96 A.L.R.3d 1275 (1979 & Supp.1989).

**11.** The only term about which the parties negotiated and arguably agreed was terms of payment. There was testimony as to daily pay-ments, weekly payments, and no payments. There were allusions to payments by cash, company check, and cashier's check. The record is less than clear, however, as to whether the alleged contract ever required any particular time or form of payment.

**12.** In light of our analysis, we do not reach the question whether the purported oral argument in 1979 is subject to the statute of frauds.

*1984*, Rosenthal did not disclose that he was acting for a corporate principal. It therefore appears that some disclosure was made during that year. Under the authorities cited, Rosenthal is personally liable for breach of contract with regard to each delivery made by National Produce prior to effective disclosure of his agency.[13] Personal liability does not attach, on the other hand, with respect to deliveries made after such disclosure.[14]

Apparently because he viewed the case as involving only a single umbrella contract, the trial judge made no finding as to the date of disclosure or as to when National Produce made the deliveries for which it has not been paid. We must therefore remand the case to the trial judge for these additional findings and for a determination as to Rosenthal's liability in light of them.[15]

## IV

## NATIONAL PRODUCE'S CROSS–APPEAL

Since we vacate the judgment on Rosenthal's appeal, we must now address the merits of National Produce's cross-appeal. The cross-appellant has two strings to its bow, each relating to its attempt to persuade the court to disregard R & R's corporate status as a sham designed to protect Rosenthal from liability for debts fairly chargeable to him. Seizing on R & R's apparently unrepaid loans to Rosenthal, National Produce contends that the trial judge committed reversible error by refusing to permit it to amend its complaint at the conclusion of the trial to embrace its request to pierce the corporate veil, and by declining to grant relief on that theory. National Produce further claims that the motions judge abused his discretion by denying in part its motion to compel discovery, and argues that if the motions judge had ruled correctly, it could have filed a more timely motion to amend its complaint. We are of the opinion that, given the situation that confronted him, the trial judge correctly declined to permit a belated amendment and to consider the veil-piercing theory. We conclude, however, that the motions judge abused his discretion in denying National Produce's motion to compel discovery as to documents whose discoverability was undisputed, that this denial inhibited timely amendment, and that National Produce should be permitted to amend its complaint to include a request to pierce the corporate veil if the court reaches that issue on remand.

### A. The Motion to Amend at the Close of Trial.

■ National Produce discovered the existence of R & R's loans to Rosenthal only after appellants introduced R & R's 1980 and 1981 corporate tax returns into evidence. It contended in the trial court, and now argues to us, that its opponents' failure to object to its cross-examination of

---

**13.** Rosenthal argues that National Produce had notice of his agency when it received and cashed checks on R & R's account. Use of a trade name, standing alone, is insufficient to establish as a matter of law that R & R's corporate status was disclosed. *Resnick, supra,* 104 A.2d at 256. In this case, however, the checks *reflected the fact of incorporation.* Whether those checks, which were apparently seen, at least initially, only by clerical employees of National Produce, constituted effective disclosure is a question which must be decided in the first instance by the trial court when it reconsiders this case on a "many contracts" hypothesis. The judge may already have disposed of this specific question favorably to National Produce, but we are uncertain whether he reached it, especially since his decision was evidently predicated on his implicit finding that there was only a single contract.

**14.** There was testimony at the trial that the deliveries for which National Produce was not paid were made during the period from April 12, 1984 through September 7, 1984.

**15.** National Produce also argues that the evidence at trial established that R & R's corporate veil should have been pierced, and that we should affirm the judgment on that ground. For reasons discussed below in connection with the cross-appeal, *see* pp. 371–373, *infra,* we conclude that this issue was not presented to the trial court in timely fashion, and that Rosenthal never had the opportunity to present evidence addressed to this issue. We decline to decide the case on the basis of an issue with respect to which one of the contestants has not made his record and on which he has not been heard.

Rosenthal regarding the loans demonstrates that he gave his implied consent to the trial of the piercing issue. *See Moore v. Moore,* 391 A.2d 762, 768–69 (D.C.1978). National Produce insists that under the liberal provisions of the Superior Court's Civil Rules relating to amendment of pleadings, it was entitled to amend its pleadings to conform to the evidence. *See Johnson v. Ridgeway,* 354 A.2d 851, 852 (D.C.1976) (per curiam) (citing authority, omitted here, for the proposition that "the purpose of these rules is to avoid the tyranny of formalism"); Super.Ct.Civ.R. 15(b). We cannot agree.

Rule 15(b) requires the court to treat issues which have been tried with the implied consent of the parties as if they had been raised in the pleadings. This court has held that "[t]he clearest indications of a party's implied consent to try an issue lie in the failure to object to evidence, or in the introduction of evidence which is clearly apposite to the new issue but not to other matters in the pleadings." *Moore, supra,* 391 A.2d at 768. To justify a finding of implied consent, it must appear that the "parties understood [that] the evidence was aimed at the unpleaded issue." *State v. Peterson,* 104 Wis.2d 616, 630, 312 N.W.2d 784, 791 (1981) (relying on interpretations of the federal rule to interpret the parellel Wisconsin rule); 6A C.A. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1493, at 40 (2d ed. 1990) (stating the same with regard to the federal rule); *see also Moore, supra,* 391 A.2d at 768 (stating that the interpretation of Rule 15(b) of the Civil Rules of Procedure is "aided by" interpretations of the analogous federal rule).

In *Moore,* this court considered the propriety of an award of separate maintenance in favor of a wife at the conclusion of a husband's suit for custody of their son. On appeal by the husband, the court rejected the wife's argument that the parties had tried the issue of her separate maintenance

by implied consent after the husband had failed to object to evidence of her financial needs. *Id.* 391 A.2d at 770. The court held that this evidence was not "so uniquely pertinent to her support alone, in contrast with the custody or the child support issues,[16] that it justifies our concluding that [the plaintiff] had adequate, timely notice of, and an opportunity to contest, a claim by his wife for her own support." *Id.*

The amended complaint in this case contained an averment that Rosenthal defrauded National Produce by failing to inform it that his business was incorporated. National Produce also alleged that the transfer in 1984 of many of R & R's assets to Rosenthal constituted a fraudulent conveyance. With the exception of the testimony regarding the 1980 and 1981 loans, National Produce points to nothing in the transcript or record to support its argument that the piercing issue was tried by implied consent. In light of the claims of fraud and fraudulent conveyance, we cannot conclude that the evidence of the loans was "uniquely pertinent to" the piercing issue. *Moore, supra,* 391 A.2d at 770.

Moreover, the evidence of the loans was presented immediately before the conclusion of the trial. If the judge had permitted so belated an amendment, this would not have given Rosenthal timely notice of the "piercing" issue or a reasonable opportunity to contest it. National Produce cites Rule 15(b) for the proposition that the trial court could have granted "a brief continuance" to allow Rosenthal and R & R time to prepare to respond to the newly enunciated theory. The provision of Rule 15(b) authorizing such a continuance, however, applies to the situation which arises when, after a party has objected to evidence as not conforming to the pleadings, the offering party responds by moving to amend his pleadings and the court grants the motion to amend. Super.Ct. Civ.R. 15(b). That is not what occurred here.[17] We conclude that, on the basis of

**16.** Prior to this portion of the *Moore* opinion, the court had upheld the trial court's grant to the wife of her motion to amend her answer under Rule 15(b) to assert a counterclaim for

custody and child support. *Moore, supra,* 391 A.2d at 769.

**17.** A motion to amend the complaint under such circumstances is governed by standards differ-

the record as it existed when he ruled, the trial judge correctly denied National Produce's motion to amend. Accordingly, his refusal to pierce the corporate veil was not erroneous.

## B. The Discovery Dispute.

█ As part of its pretrial discovery in support of the various theories of recovery—not including piercing of the corporate veil—on which its amended complaint was based, National Produce served requests for production of documents upon both Rosenthal and R & R. It asked the defendants to produce, among other things, a broad array of documents relating to R & R's business and financial activities. Rosenthal and R & R never contested the discoverability of most of the requested documents. They declined to produce them, however, because National Produce had objected to certain discovery requests propounded by Rosenthal and R & R.[18] In response to National Produce's motion to compel discovery, counsel for Rosenthal and R & R invited the court to resolve all discovery disputes simultaneously by granting each side, (with the exception of two categories of documents relating to Rosenthal individually), full access to the information which it had sought from the other.[19]

National Produce brought to the motions judge's attention Rosenthal's and R & R's concession that National Produce was entitled to almost all the discovery it sought. Nevertheless, the judge directed Rosenthal and R & R to bring to the trial certified financial statements and copies of their respective federal tax returns for the past three years, but in all other respects denied National Produce's motion to compel. This meant in effect that the court granted National Produce limited discovery as to the information to which Rosenthal and R & R objected, but denied pretrial access to documents as to which discoverability was not at issue.

Undeterred, National Produce served subpoenas upon Rosenthal and R & R to obtain for use at trial the documents as to which appellants had not resisted discovery. These documents were produced without objection. Indeed, the defendants offered several of them into evidence as their own exhibits. It was through the production of these documents, and from testimony related to them, that National Produce first learned that Rosenthal had received substantial loans from R & R and that the corporate books did not reflect that any portion of these loans had been repaid. These revelations were, of course, the centerpiece of National Produce's eventual claim that R & R's corporate identity

---

ent from those which apply when an issue has been tried by implied consent. *Compare Johnson, supra,* 354 A.2d at 852 (holding that when issues are tried by implied consent, Rule 15(b) is "mandatory rather than permissive in its terms" on the question of allowing amendments to pleadings, *and* Super.Ct.Civ.R. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent ..., they *shall* be treated ... as if they had been raised in the pleadings.") (emphasis added), *with* Super.Ct. Civ.R. 15(b) ("If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the Court *may* allow the pleadings to be amended and shall do so freely" when *presentation of the merits will be subserved and the objecting party is not prejudiced.) (Emphasis added).

At trial, National Produce did not identify the rule under which it was seeking to amend its complaint. If the request is deemed to have been made pursuant to Rule 15(a), which in general terms permits amendments during trial with leave of court, the court acted within its

discretion in denying the amendment. *See Gordon v. Raven Sys. & Research, Inc.,* 462 A.2d 10, 13–14 (D.C.1983).

18. Counsel for Rosenthal and R & R told the trial court that he had "notified Plaintiffs' counsel *not that the documents would not be produced,* but that they would be produced in conjunction with working out the entire discovery dispute between the parties."

19. The two exceptions related to National Produce's requests for discovery of Rosenthal's personal assets, especially tax returns, to which Rosenthal objected on the merits. National Produce contended that these documents were discoverable in relation to its claim for punitive damages because they were said to be relevant to his personal net worth. Rosenthal asserted that there was no basis for a claim of punitive damages and that this portion of the proposed discovery constituted an unwarranted intrusion into his privacy.

should be disregarded, and they led to the plaintiff's motion later in the trial to amend its complaint to conform to the evidence.

The motions judge gave no reason for denying the undisputed portion of National Produce's discovery, and Rosenthal's sole argument in this court in favor of sustaining the judge's action is the conclusory statement in his brief that "in light of the pertinent facts" (which facts are not further identified), the trial court did not abuse its discretion.

The trial court has wide latitude in resolving discovery problems, and its decision will not be disturbed on appeal unless that discretion has been abused. *Mampe v. Ayerst Laboratories*, 548 A.2d 798, 805 n. 15 (D.C.1988); *White v. Washington Metropolitan Area Transit Auth.*, 432 A.2d 726, 728–29 (D.C.1981). A request for discovery is proper, even if the information sought would not be admissible at trial, so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Super.Ct.Civ.R. 26(b)(1). As the Supreme Court explained in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978),

> discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

Moreover, the discovery rules have been "generously construed to provide a great deal of latitude for discovery." *Harris v. Nelson*, 394 U.S. 286, 297, 89 S.Ct. 1082, 1089, 22 L.Ed.2d 281 (1969); 8 C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2007, at 37 (1970 & 1988 Supp.).

Given the lack of any explanation by the motions judge of his refusal to permit the uncontested portion of the discovery and the failure of the parties who benefited from that decision meaningfully to defend it, we find persuasive National Produce's contention that the judge abused his discretion in this regard. Our conclusion is bolstered by Rosenthal's introduction at trial of some of the very documents to which the judge had denied National Produce pretrial access. If these documents had been made available during discovery, National Produce would have been apprised of R & R's apparently unrepaid loans to Rosenthal, and would have been in a position to request leave to amend its pleadings well in advance of trial.

Accordingly, although we have concluded that the trial judge did not err in declining to permit amendment of the complaint at the conclusion of the trial, we are of the opinion that his decision on that issue resulted from an earlier abuse of discretion by the motions judge which effectively inhibited the timely filing of a motion to amend well in advance of trial. Moreover, since the case must be remanded to the trial court in connection with Rosenthal's appeal, Rosenthal will have adequate time to prepare to meet National Produce's contention that the corporate veil should be pierced, and will not be prejudiced if we permit the complaint to be amended accordingly. Siphoning of corporate funds by the dominant stockholder is an important factor in determining whether corporate formalities should be disregarded, especially where a closely held corporation is under-capitalized. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir.1976). It would be premature for us to decide at this stage of the proceedings whether this occurred here, but there is at least plausible evidence of such diversion. Rule 15(a) provides that leave to amend shall be freely given when justice so requires. Any possibility of surprise or ambush can now be avoided. Accordingly, we think that this is an appropriate occasion for invoking the liberal spirit of the Rule and directing that amendment be permitted in the interests of justice.

## V

### CONCLUSION

We summarize our holding. The judgment against R & R is affirmed. The judgment against Rosenthal is vacated and the case is remanded for further proceed-

ings. On remand, each delivery by National Produce shall be treated as a separate contract, and the trial judge shall first determine, with respect to each delivery for which no payment has been made, whether National Produce was on notice of Rosenthal's agency. Rosenthal shall be held liable in connection with any promised or actual delivery which was promised or made prior to the disclosure of his agency, but shall not be found in breach of any contract where disclosure preceded promise or delivery. *See* D.C.Code § 28:2–206(1)(b) (1981).

If the trial judge concludes that every delivery for which payment was not received preceded Rosenthal's disclosure of Rosenthal's agency, this resolves the case and no further proceedings are required. In the event that the judge concludes that National Produce made any delivery after disclosure, however, he shall grant the previously denied discovery motion and allow National Produce to amend its complaint to incorporate its request that the corporate veil be pierced. Unless the judge is satisfied following inquiry to the parties that further discovery would serve no useful purpose,[20] the parties shall be accorded a

reasonable opportunity for additional discovery on the veil-piercing issue, and shall be permitted to introduce evidence to supplement the record of the original trial.

We recognize that, in the absence of a negotiated settlement, further proceedings on remand will cost time and money—perhaps more, when added to what has been previously expended, than the amount over which they have crossed swords. Nevertheless, parties have the right to be heard on all legitimate issues even if, half a decade after the case was brought, conclusion of the litigation, and perhaps payment for the radishes, may still be somewhere over the rainbow. Accordingly, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**20.** National Produce's brief to this court could be read as suggesting that the evidence at trial has provided it with all the ammunition it needs to sustain a veil-piercing theory. There is no unequivocal statement to that effect, however, and although we would anticipate that most if not all further discovery would be propounded by National Produce, Rosenthal has the right to be heard on that issue.