Frederick F. CALVETTI,
et al., Plaintiffs,

v.

David ANTCLIFF, et al., Defendants.

No. CIV.A.01–515(RBW).

United States District Court,
District of Columbia.

Nov. 16, 2004.

---

**34.** An Order consistent with this Memorandum Opinion was issued on September 30, 2004.

Benjamin Gaillard Chew, Andrew Michael Friedman, Patton Boggs, LLP, Frederick F. Calvetti, Washington, DC, David C. Newman, Smith, Gambrell & Russell, LLP, Atlanta, GA, for Plaintiffs.

David Antcliff, Fenton, MI, pro se.

Ira C. Wolpert, Bethesda, MD, Raena S. Close, William Lewis Stauffer, Jr., Bracewell & Patterson, LLP, Reston, VA, for Defendants.

## *MEMORANDUM OPINION*

WALTON, District Judge.

The plaintiffs, Fred and Barbara Calvetti, initiated this breach of an oral contract action because the defendants allegedly failed to complete repair work on two of the plaintiffs' Washington, D.C. properties. The defendants have now filed separate

motions for summary judgment.[1] As to defendant Charles Antcliff, currently before the Court are: (1) the defendant Charles Antcliff, Antcliff Windows & Doors, Inc., and Antcliff Aluminum Products Installations, Inc. [collectively "Charles Antcliff" or "C.A."] Motion for Summary Judgment ("Def. C.A.'s Mot.");[2] (2) the plaintiffs' Memorandum of Points and Authorities in Opposition to the Motion for Summary Judgment by Charles Antcliff, Antcliff Windows & Doors, Inc., and Antcliff Aluminum Products Installations, Inc. ("Pls.' Opp'n to C.A.'s Mot."); and (3) the defendants' Reply in Support of Motion for Summary Judgment ("Def. C.A.'s Reply"). Also, as to the defendant David Antcliff, currently before the Court are: (1) defendant David Antcliff's Motion for Summary Judgment ("Def. D.A.'s Mot."); (2) the plaintiffs' Memorandum of Points and Authorities in Opposition to David Antcliff's Motion for Summary Judgment ("Pls.' Opp'n to D.A.'s Mot."); and (3) the defendant David Antcliff's Response to plaintiffs' Opposition to his Motion for Summary Judgment ("Def. D.A.'s Reply"). For the following reasons, this Court will grant in part and deny in part both motions of the defendants and deny David Antcliff's motion to strike the plaintiffs' expert report.

## I. *Factual Background*

Plaintiff Fred Calvetti and defendant David Antcliff are cousins. Defendant Charles Antcliff's Statement of Material Facts not in Dispute ("Defs.' Stmt.") ¶ 1. Fred Calvetti's father, Victor Calvetti, and David Antcliff's father, defendant Charles Antcliff, are half-brothers. *Id.* ¶ 1. At the end of 1997 or beginning of 1998, David Antcliff and his wife moved into the home

of Victor Calvetti in Michigan, and began doing significant renovations to the home, such as the installation of a shower and a bathtub, painting, and renovation of the kitchen. *Id.* ¶ 2. In July 1997, Charles Antcliff allegedly informed the Calvettis that David Antcliff could complete various home renovation projects on two Calvetti owned properties in the District of Columbia. Plaintiffs' Statement of Disputed Issues of Material Fact ("Pls.' Stmt.") ¶ 4. According to the Calvettis, they discussed with both Charles Antcliff and David Antcliff the scope of the work that would be performed, and Charles Antcliff agreed to oversee David Antcliff's work. *Id.* ¶ 4. Then, in March 1998, while David Antcliff was still renovating Victor Calvetti's home in Michigan, Fred Calvetti allegedly entered into an oral agreement with David Antcliff for the renovation of the two Calvetti owned properties located in the District of Columbia. Defs.' Stmt. ¶ 5.

Under the March agreement, David Antcliff agreed to perform the work for the Calvettis at cost plus ten percent. Pls.' Stmt. ¶ 26. Moreover, the parties allegedly agreed that David Antcliff would provide receipts to the plaintiffs verifying the payments that were made to him. *Id.* ¶ 8. Work on the Calvetti properties began on or around March 24, 1998 and was expected to take two to three months to complete. *Id.* ¶ 9. After advancing David Antcliff money to begin the renovation work, Fred Calvetti became concerned when work was not being completed and David Antcliff and his crew abandoned the sites. *Id.* ¶ 14. By May 1998, the plaintiffs claim they had advanced over $160,000 to David Antcliff for the renova-

---

1. Also pending before the Court is David Antcliff's motion to strike the plaintiffs' expert report. The Court will address this motion at the end of this opinion. *See infra* at 110.

2. The Court refers to the defendants by their initials in citing their respective pleadings because the defendants share the same last name.

tions, which they contend were never completed. *Id.* ¶ 21.

In this lawsuit, the plaintiffs assert five claims against David Antcliff, Charles Antcliff and Antcliff Aluminum: fraud, breach of contract, unlawful trade practices, conversion, and breach of trust. Compl. ¶¶ 46–97. The plaintiffs seek both compensatory and punitive damages. Compl. ¶¶ 93–97; Pls.' Stmt. ¶ 21.

## II. *Standards of Review*

■ The defendant, Charles Antcliff, has filed a motion for summary judgment and has provided to the Court a detailed record in which to evaluate his motion. However, the papers submitted by David Antcliff, although captioned as a motion for summary judgment under Federal Rule of Civil Procedure 56(c), appear to be more accurately a motion for judgment on the pleadings pursuant to rule 12(c). This is because the majority of David Antcliff's arguments assert that the plaintiffs' complaint is legally insufficient. For example, when discussing the fraud claim, David Antcliff opines that "fraud has not been plead with particularity and proven by clear and convincing evidence." Def. D.A.'s Mot. at 10. Moreover, to the extent that David Antcliff is seeking summary judgment, this Court is unable to undertake such a review because he has failed to provide with his motion any evidence through affidavits, deposition transcripts, or responses to interrogatories. *See, e.g., Aetna Cas. & Sur. Co. v. William M. Mercer, Inc.,* 173 F.R.D. 235, 236 (N.D.Ill. 1997) (noting that the defendant's motion would be treated as a judgment on the pleadings because the defendant did not submit any materials outside the pleadings). Therefore, this Court will construe the bulk of David Antcliff's motion as one for judgment on the pleadings [3] as opposed to a motion for summary judgment.

Despite the deficiencies of the papers submitted by David Antcliff in support of his request for summary judgment relief, in some instances, both David and Charles Antcliff make the same legal arguments and advance the same factual allegations in support of their motions. Thus, to the extent possible, this Court has incorporated the factual support provided by Charles Antcliff into David Antcliff's motion so that it can, in those instances, collectively address whether both parties are entitled to summary judgment. *Cf. J. Maury Dove Co. v. Cook,* 32 F.2d 957, 958 (D.C.Cir. 1929) (party is entitled to benefit from all evidence that favors him even if produced by his adversary). The Court has concluded that this is the proper way to proceed because the plaintiffs were afforded the opportunity to respond to and challenge the evidentiary foundation for the legal arguments, albeit in their papers filed in response to Charles Antcliff's motion for summary judgment. Moreover, this result is especially appropriate in this case in light of the fact that the responses to Charles Antcliff's factual allegations would have been the same as any factual challenge to David Antcliff's legal challenges had the plaintiffs taken the opportunity to challenge Charles Antcliff's factual allegations. Accordingly, the plaintiffs will not be prejudiced by the Court proceeding in this manner.[4]

---

3. David Antcliff's motion could also be construed as a motion to dismiss under Rule 12(b)(6), however, even if this Court were to construe the motion as one under 12(b)(6) as opposed to one for judgment on the pleadings under 12(c), the analysis that follows would not change because the standards of review under both are virtually identical. *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir. 1987).

4. As indicated, both David and Charles Antcliff raise a number of arguments that are substantially similar in form and substance.

**(A) Motion for Summary Judgment**

Summary judgment is generally appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a summary judgment motion, the Supreme Court has explained that a trial court must look to the substantive law of the claims at issue to determine whether a fact is "material," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and must treat a "genuine issue" as "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Sanders v. Veneman*, 211 F.Supp.2d 10, 14 (D.D.C.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

While it is generally understood that when considering a motion for summary judgment a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true[,]" *Greene v. Amritsar Auto Servs. Co.*, 206 F.Supp.2d 4, 7 (D.D.C.2002) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505), the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position . . . ." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a summary judgment motion, the moving party must demonstrate that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "Even when material facts are in dispute, however, summary adjudication may be appropriate if, with all factual inferences drawn in favor of the nonmovant, the movant would nonetheless be entitled to judgment as a matter of law." *Young Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed.Cir.1997) (citing *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1572–73 (Fed.Cir.1994)). The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

**(B) Motion for Judgment on the Pleadings**

 A court will grant judgment on the pleadings "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Longwood Village Rest., Ltd. v. Ashcroft*, 157 F.Supp.2d 61, 66 (D.D.C.2001) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). "[I]f there are allegations in the complaint which, if proved, would provide a basis for recovery[,]" the Court cannot grant judgment on the pleadings. *Haynesworth v. Miller*, 820 F.2d

---

Additionally, there can be no dispute that the plaintiffs had the opportunity to challenge the record evidence submitted by Charles Antcliff. Moreover, the plaintiffs submitted virtually identical opposition briefs in response to both of the defendants' motions for summary judg-

ment. Accordingly, the plaintiffs had a meaningful opportunity to challenge the factual assertions raised by David Antcliff by having the opportunity to address the evidence submitted by Charles Antcliff on the same legal arguments advanced by David Antcliff.

1245, 1254 (D.C.Cir.1987). Accordingly, all factual doubts are resolved in favor of the plaintiffs. *Id.*

### III. *Legal Analysis*

Charles and David Antcliff seek judgments in their favor based upon their arguments that the plaintiffs have not met their burdens of establishing any of their claims—fraud, breach of contract, unlawful trade practices, conversion, and breach of a building trust[5]—as well as their requests for the recovery of punitive damages. The Court will address each argument separately.

### (A) The Fraud Claim

■ The plaintiffs' fraud claim against Charles Antcliff and Antcliff Aluminum allegedly arises from false representations made by Charles Antcliff that David Antcliff was competent to perform quality home renovation work, that David Antcliff would be performing the renovations on behalf of Charles Antcliff's companies, that David Antcliff was a licensed builder, that Charles Antcliff would oversee the performance of the work to ensure that it was being done properly, and that Charles and David Antcliff would supply the plaintiffs with invoices and receipts to verify the work that had been performed. Pls.' Opp'n to C.A.'s Mot. at 5–6. To support a claim of fraud, the plaintiffs must establish facts that show "(1) a false representation (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken on reliance upon the representation." *Brown v. Dorsey & Whitney, LLP,*

267 F.Supp.2d 61, 79 (D.D.C.2003) (quoting *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C. 1977)).

■ Defendant Charles Antcliff contends that he should be granted summary judgment on the fraud claim because the plaintiffs have failed to establish evidence showing that Charles Antcliff or Antcliff Aluminum (1) made fraudulent statements; (2) induced the plaintiffs to rely on those statements; and (3) because the plaintiffs have failed to proffer evidence to demonstrate Charles Antcliff's intent. Statement of Points and Authorities in Support of Defendants Charles Antcliff, Antcliff Windows & Doors, Inc. and Antcliff Aluminum Products Installations, Inc. Motion for Summary Judgment ("Def. C.A.'s Mem.") at 4–8; Def. C.A.'s Reply at 7. Assuming, without deciding, that Charles Antcliff did in fact make fraudulent statements and that the plaintiffs relied on those statements, the record, however, is devoid of any evidence to support a finding that Charles Antcliff intended to make fraudulent statements.[6] The plaintiffs do not argue in their papers submitted to the Court that they have satisfied this prong of the fraud analysis, nor do they direct the Court to anything in the record to support a finding of intent to deceive. Moreover, after a careful review of the record submitted by Charles Antcliff, this Court cannot find any evidence to infer an intent to deceive. The plaintiffs' failure to submit evidence concerning this essential component of a claim for fraud demands that this Court grant summary judgment on this count to defendant Charles Antcliff.

---

5. The plaintiffs actually alleged seven counts in their complaint. However, the plaintiffs now concede that count V, theft by fraud, is duplicative and should be dismissed. *See* Pls.' Opp'n to D.A.'s Mot. at 5 n. 2. Additionally, despite being plead as a separate claim, the plaintiffs appear to concede that punitive

damages is not really a separate claim for relief. Pls.'s Opp'n to C.A.'s Mot. at 12.

6. David Antcliff does not allege in his papers that the plaintiffs have failed to satisfy the intent element of the fraud claim as to him.

*See Ago v. Begg, Inc.*, 911 F.2d 819, 1990 WL 125683 at \*4 (D.C.Cir.1990) (unpublished) (affirming district court's entry of judgment notwithstanding the verdict on fraud count because of the absence of clear and convincing evidence of intent to deceive); *Cumis Ins. Soc'y v. Munoz*, C.A. No. 94–1071 (WBB), 1996 WL 496982, at \* 2 (D.D.C. Aug.28, 1996) ("the [p]laintiff did not present clear and convincing evidence that the [d]efendant either knew that he was assisting a fraud or had an intent to deceive anyone," thus, the defendant could not be held "liable for fraud").

▆▆▆▆ David Antcliff seeks judgment in his favor because he contends that the plaintiffs have simply alleged a breach of contract claim couched in a claim of fraud. Def. D.A.'s Mem. at 8.[7] Specifically, David Antcliff contends that the plaintiffs have failed to assert a breach of an independent common law duty separate from the alleged contractual agreement. *Id.* To support his argument that this omission warrants dismissal of the fraud claim, he cites *Wilmington Trust Co. v. Clark*, 289 Md. 313, 424 A.2d 744, 754 (1981) (stating that a "duty giving rise to [a] tort cause of action must be independent of the contractual obligation") and *Richmond Metro. Auth. v. McDevitt St. Bovis Inc.*, 256 Va. 553, 507 S.E.2d 344, 346 (1998) (stating that a plaintiff can show both a breach of

contract and a tortious breach of duty if the duty tortiously or negligently breached a "common law duty, not one existing between the parties solely by virtue of the contract").[8] These cases hold, as David Antcliff asserts, that the mere failure to perform a contractual duty without more, is not an actionable tort. And since the common-law of Maryland[9] applies to the District of Columbia, the plaintiffs have in fact plead a claim of fraud separate and apart from their claim for breach of contract. As this Court is required to do on a motion for judgment on the pleadings, all factual questions must be construed in favor of the plaintiff and such a motion must be denied if "there are allegations in the complaint which, if proved, would provide a basis for recovery." *Haynesworth*, 820 F.2d at 1254. Here, the alleged breach of contract is the Antcliffs' failure to complete the work as it was allegedly agreed to in the contract. Compl. ¶¶ 54–59. On the other hand, the cause of action for fraud is based upon the alleged fraudulent misrepresentation that were made concerning expenses and invoices for the projects. *Id.* ¶¶ 48–53. While many of the facts underlying these two claims are interrelated, they are two distinct claims for relief. Thus, David Antcliff's motion to dismiss the plaintiffs' fraud claim must be denied.[10]

7. David and Charles Antcliff assert different arguments to support their motions for summary judgment on this claim. Accordingly, the Court is unable to incorporate Charles Antcliff's factual assertions into David Antcliff's argument. Therefore, the Court construes David Antcliff's argument on this count as a motion for judgment on the pleadings because he has failed to set forth any record evidence to support his motion, and thus the plaintiffs were not afforded the opportunity to challenge the facts that might support David Antcliff's position. *See supra* page 98 n. 3.

8. Surprisingly, the plaintiffs appear not to even address this argument, other than by

way of a brief statement in a footnote. Pls.' Opp'n to D.A. at 5 n. 2.

9. District of Columbia courts are bound by the common law of Maryland in effect in 1801, subject of course to the inherent power of the District of Columbia Court of Appeals to alter or amend the common law. *See Williams v. United States*, 569 A.2d 97, 99–100 (D.C.1989); *see also* D.C.Code § 45–401.

10. David Antcliff also argues that the allegations in the plaintiffs' complaint conflicts with other assertions in the complaint and the deposition testimony. Def. D.A.'s Mem. at 8.

## (B) The Breach of Contract Claim

 For an enforceable contract to exist, there must be both (1) agreement as to *all* material terms; and (2) intention of the parties to be bound by those terms. *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F.Supp.2d 77 (D.D.C.2003) (citing *Georgetown Entm't Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C.1985)). Contracts must be sufficiently definite as to their material terms, "which include, *e.g.*, subject matter, price, payment terms, quantity, quality, and duration . . . ." *Shulman v. Voyou, L.L.C.*, 251 F.Supp.2d 166, 168 (D.D.C.2003) (citing *Rosenthal v. Nat'l Produce Co., Inc.*, 573 A.2d 365, 370 (D.C. 1990)). In the District of Columbia, "[a]bsent any contrary requirement under a statute of frauds, parties may enter into enforceable oral contracts, *as long as they agree to all material terms* and intend to be bound by their oral agreement." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C.1995) (emphasis added). Additionally, the party asserting the existence of an enforceable contract bears the burden of proving its formation. *Novecon Ltd. v. Bulgarian–American Enter. Fund*, 190 F.3d 556, 564 (D.C.Cir. 1999).

Charles and David Antcliff both contend that the plaintiffs are unable to satisfy the first prong of an enforceable contract because the plaintiffs are unable to identify the material terms of the contract. Def. C.A.'s Mem. at 9; Def. D.A.'s Mem. at 10–11. Specifically, David Antcliff alleges that there were no agreements regarding the following material terms: (1) when the work was to start and be completed; (2) what work was to be performed; (3) when the defendants would receive payment; (4) the quality of the products that would be installed; (5) the formula for the calculation of cost plus ten percent; and (6) agreements regarding insurance, mechanics' liens, warranties, and the acquisition of permits. Def. D.A.'s Mem. at 11. The plaintiffs contend, however, that they hired Charles and David Antcliff to do home renovation work at the cost of ten percent profit and that the work was to start shortly after the parties consummated their agreement in March 1998. Pls.' Opp'n to D.A.'s Mot. at 5–6; Pls.' Opp'n to C.A.'s Mot. at 7. Moreover, the plaintiffs allege that they had specific discussions with the defendants regarding the scope of the work they wanted performed. *Id.*

Viewing the evidence in the light most favorable to the non-moving party, as this Court is required to do on a motion for summary judgment,[11] it is clear that some terms of the contract were discussed, but not all of them. First, the scope of the work to be performed was clearly discussed. Specifically, Frederick Calvetti testified that he discussed with David Ant-

---

However, because David Antcliff has failed to provide this Court with the relevant portions of the deposition testimony, the Court is unable to entertain these arguments.

**11.** Because both defendants put forth the same argument regarding the breach of contract claim, this Court is able to afford David Antcliff the benefit of the evidence presented to the Court by Charles Antcliff and therefore review his claim under a standard for summary judgment. *See supra* page 98. Additionally, the plaintiffs are not at all prejudiced by the Court incorporating Charles Antcliff's record evidence into David Antcliff's motion because the plaintiffs responded to both of the defendants' arguments in virtually the identical manner, thus indicating they had the opportunity to fully address and challenge the factual allegations. In fact, the plaintiffs in their opposition to Charles Antcliff's motion for summary judgment acknowledge that the defendants have raised identical arguments. Pls.' Opp'n to C.A.'s Mot. at 8 ("Charles Antcliff has adopted David Antcliff's facts based argument that the terms of the contract are 'too indefinite' ").

cliff that he wanted kitchen and basement renovations, and landscaping work performed. Pls.' Opp'n to D.A.'s Mot, Ex. 1, (Frederick Calvetti Deposition at 50–52). However, it is undisputed that the parties did not discuss whether there would be warranties, exactly when the work was going to be completed, and the applicability of mechanics liens. *Id.* at 62. Moreover, the record does not clearly indicate when payment for the work would be made. *Id.* at 80. The plaintiffs contend that because of the close personal relationship between the parties, they agreed to be flexible on these unaddressed terms and that in any event, they were not material terms of the contract. Pls.' Opp'n to D.A.'s Mot. at 7.

 In the District of Columbia, the law is clear that "what the parties deem to be the material elements of their agreement—either set forth in or absent from those documents, is largely a question of fact [for the jury]." *Georgetown Entm't Corp.*, 496 A.2d at 590. Although the District of Columbia Court of Appeals concluded in *Rosenthal* that material terms usually include the subject matter of the agreement, price, payment terms, quantity, quality, and duration, it did not mandate that all of these terms must be in a contract for it to be enforceable. *Rosenthal*, 573 A.2d at 370. Here, the plaintiffs have set forth evidence regarding why some of these terms were not agreed upon and why the omitted terms were not material. Accordingly, whether an enforceable contract was created and was subsequently breached is a question of fact for the jury to decide, not this Court. Therefore, the defendants' motions for summary judgment on this count must be denied.

**(C) The Unlawful Trade Practices Claim**

 "The [District of Columbia] Consumer Protection Procedures Act [("CPPA"), D.C.Code §§ 28–3901 to – 3911,] is a comprehensive statute designed to provide procedures and remedies for a broad spectrum of practices which injure consumers." *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 722–23 (D.C.2003) (quoting *Atwater v. District of Columbia Dep't of Consumer & Reg. Affairs*, 566 A.2d 462, 465 (D.C.1989)). While the CPPA enumerates a number of specific unlawful trade practices, *see* D.C.Code. § 28–3904, the enumeration is not exclusive. *See Atwater*, 566 A.2d at 465.

The CPPA states, in part, that

[i]t shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

(b) represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have;

\* \* \* \* \* \*

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead; . . . .

D.C.Code § 28–3904. The CPPA has been interpreted to only supply consumers with a cause of action against merchants who provide them with goods or services. *Athridge v. Aetna Cas. & Sur. Co.*, 163 F.Supp.2d 38 (D.D.C.2001), *rev'd in part on other grounds, aff'd in part*, 351 F.3d 1166 (D.C.Cir.2003). Charles Antcliff first

contends that the CPPA cannot apply to him because he is not a "merchant." Def. C.A.'s Mem. at 13. Additionally, both Charles and David Antcliff argue that the plaintiffs have failed to present facts that support the position that statements were made that establish a claim under the CPPA. Def. C.A.'s Mem. at 12; Def. D.A.'s Mem. at 13.[12]

In *Howard v. Riggs Nat'l Bank*, 432 A.2d 701 (D.C.1981), the District of Columbia Court of Appeals clarified against whom CPPA claims may be brought. In *Howard*, a customer of Riggs National Bank brought suit alleging that Riggs, through its employees, made material misrepresentations and withheld material information concerning a construction contractor which induced the plaintiff to use the contractor to her detriment. *Id.* at 705. The District of Columbia Court of Appeals concluded that the bank was not liable on a claim of fraudulent misrepresentation because the bank's recommendation of a contractor was just that, a recommendation. *Id.* at 706. Moreover, the Court concluded that the bank made no material misrepresentations, in part because the plaintiff had an adequate opportunity to conduct an independent investigation into the quality of the contractor's work. *Id.* at 706–07. The Court of Appeals noted, however, that the District of Columbia Circuit had found that representations made by an "agent[ ] of a party to the transaction in question" could rise to the level of a fraudulent misrepresentation. *Id.* at 707 (citing *Stein v. Treger*, 182 F.2d 696 (D.C.Cir.1950)). The court went on to conclude that after reviewing the statute and its legislative history, the CPPA does not "impose liability as a guarantor upon any private individual (or his employer) who recommends the goods or services of a particular merchant to another." *Howard*, 432 A.2d at 710. The court noted that "[w]hile a 'merchant' is not limited to the actual seller of the goods or services complained of, he must be a 'person' connected with the 'supply' side of a consumer transaction." *Id.* at 709. Thus, the Court of Appeals concluded that because the plaintiff merely recommended a contractor, it was not liable under the CPPA. *Id.* at 710.

The question before this Court then is whether Charles Antcliff's recommendation concerning David Antcliff to the plaintiffs was just that, a recommendation, or was it the statement of a person involved in the "supply" side of the transaction, which therefore created potential liability under the CPPA. It is the latter. In addition to identifying David Antcliff as a contractor who could perform the work, Charles Antcliff also allegedly "offered to have David Antcliff do the work on behalf of Charles and his businesses." Pls.' Opp'n to C.A.'s Mot., Exhibit J (Declaration of Frederick Calvetti ("Calvetti Decl.")) at 5. Moreover, the plaintiffs contend that Charles Antcliff agreed to "obtain supplies and cont[r]acts with vendors through the Antcliff Companies, and that the quality of David Antcliff's work would be overseen and monitored by Charles

---

12. Again, because both defendants put forth the same argument regarding the CPPA claim, this Court is able to afford David Antcliff the benefit of the evidence presented to the Court by Charles Antcliff and therefore review his claim under the standard applicable to summary judgment motions. *See supra* page 98. The Court also notes that the oppositions submitted by the plaintiffs to David and Charles Antcliff's arguments on this challenge are virtually identical. *See* Pls.' Opp'n to C.A.'s Mot. at 9–10; Pls.' Opp'n to D.A.'s Mot. at 7–8. Accordingly, it is clear that the plaintiffs had the full opportunity to challenge the factual underpinnings of David Antcliff's arguments and the plaintiffs will suffer no prejudice by the Court incorporating Charles Antcliff's facts into David Antcliff's motion.

Antcliff." *Id.* at 6. This alleged involvement by Charles Antcliff clearly amounted to more than a mere recommendation of David Antcliff, as there is evidence in the record that Charles Antcliff would be involved in the "supply" side of the transaction. Thus, the limitation of the CPPA's reach in *Howard* is not applicable to this case. Therefore, this Court must conclude that Charles Antcliff is not exempt from potential CPPA liability.

The Court must now determine whether the plaintiffs have established facts that support their claim of unlawful trade practices under the CPPA. Although the plaintiffs allege violations of D.C.Code § 28–3904(a), (b), (d), (e), & (f), the only clear challenges in Charles Antcliff's motion are to the applicability of subsections (e) and (f). Def. C.A.'s Mem. at 12–13; Def. C.A.'s Reply at 13–15.[13] However, he does appear to also be challenging subsection (a) because he alleges that the record does not support a finding that David Antcliff was a licensed builder/contractor. Def. C.A.'s Reply at 14–15. Thus, since subsections (b) and (d) have not been challenged by Charles Antcliff, the Court will assume that Charles Antcliff has conceded that the plaintiffs' claims under subsections (b) and (d) are sufficient to avoid summary judgment.

■ To state a claim under subsections (e) and (f), the plaintiff must establish (1) the failure to disclose a material fact or the misrepresentation of a material fact (2) which would tend to mislead. D.C.Code

§ 28–3904(e)-(f). Here, Charles Antcliff attempts only to argue that his purported statement cannot be the basis for a CPPA claim because it was merely an opinion, not a factual statement upon which the plaintiffs were entitled to rely. Charles Antcliff again relies on the *Howard* case to support his contention that his statements were merely a recommendation. However, as discussed above, the limited holding in *Howard* does not apply to this case. Although *Howard* clearly holds that a mere recommendation cannot rise to the level of a false or misleading representation, the court made clear that if an agent of a party to the transaction in question made the misrepresentation, such statements could rise to the level of fraud. *Howard*, 432 A.2d at 707. As discussed above, here, Charles Antcliff allegedly "offered to have David Antcliff do the work on behalf of Charles and his businesses." Pls.' Opp'n to C.A.'s Mot., Exhibit J (Calvetti Decl.) at 5. Moreover, the plaintiffs contend that Charles Antcliff agreed to "obtain supplies and cont[r]acts with vendors through the Antcliff Companies, and that the quality of David Antcliff's work would be overseen and monitored by Charles Antcliff." *Id.* at 6. This alleged involvement by Charles Antcliff clearly rises far above the level of involvement of the defendant in *Howard* and therefore application of the holding in *Howard* is not appropriate. Thus, Charles Antcliff's position that *Howard* requires that his alleged statements be construed as nothing more than a recommendation must be rejected.[14]

---

13. David Antcliff only challenges the application of subsections (a), (d), and (f). David Antcliff's argument as to subsection (a) is identical to that of Charles Antcliff so this Court's reasoning on that count will apply to both defendants. However, David Antcliff's challenges to subsections (d) and (f) are based on his own deposition testimony, which he again has failed to provide to the Court. Thus, this Court will not entertain David Ant-

cliff's request for summary judgment on these points and because David Antcliff's arguments are based upon what is purportedly contained in the record, the Court cannot consider them under the standard of review applicable to a motion for judgment on the pleadings either. David Antcliff's request as to both challenges must therefore be denied.

14. The plaintiffs also allege a number of other factual reasons why the defendants have vio-

■ Additionally, Charles Antcliff alleges that the plaintiffs have failed to allege facts that support a finding that David Antcliff was a licensed builder, supposedly challenging the sufficiency of the plaintiffs' claim based on subsection (a). Def. C.A.'s Reply at 14–15. To the extent that Charles Antcliff is alleging that he never told the plaintiffs that David Antcliff was a licensed contractor, and thus, never made representations regarding the quality of the goods or services David Antcliff would provide, his own pleading points to a portion of Frederick Calvetti's deposition where a jury could reasonably infer that he represented to the plaintiffs that David Antcliff was a licensed contractor. *Id.* This inference can be made because Frederick Calvetti stated in his deposition that Charles Antcliff, prior to March 10, 1998, told him that his son was a licensed contractor. Specifically, Frederick Calvetti stated: "When he refused or said that Carl Antcliff was not available and recommended—who was a licensed contractor, and recommended David Antcliff, that said it to me. But he didn't specifically use those words." Def. C.A.'s Reply, Ex. 1 (Frederick Calvetti Deposition) at 262. To the extent that there may be contradictory testimony in the record on this point is of no benefit to Charles Antcliff in his quest to obtain summary judgment. This is because conflicting testimony raises an issue of credibility for the jury, not this Court. *See Owens v. National Medical Care, Inc.,* 337 F.Supp.2d 131, 140 (D.D.C.2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Accordingly, Charles Antcliff's summary judgment motion di-

rected to the CPPA claim in the complaint must be denied.

**(D) The Conversion Claim**

■ Conversion is the unlawful exercise of ownership and dominion and control over the personal property of another in denial or repudiation of that person's right thereto. *O'Callaghan v. District of Columbia,* 741 F.Supp. 273, 279 (D.D.C. 1990); *see also Shea v. Fridley,* 123 A.2d 358, 361 (D.C.1956); *Duggan v. Keto,* 554 A.2d 1126, 1137–38 (D.C.1989); see, e.g., Restatement (Second) of Torts § 222A cmt. d (1965) ("In each case the question to be asked is whether the actor has exercised such dominion and control over the chattel, and has so seriously interfered with the other's right to control it, that in justice he should be required to buy the chattel."). Even where defendant's initial possession of property is lawful, demand for its return by a plaintiff may render continued possession unlawful and show its adverse nature. *Savoy Const. Co., Inc. v. Atchison & Keller, Inc.,* 388 A.2d 1221, 1223 (D.C.1978). "Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money." *Curaflex Health Servs., Inc. v. Bruni,* 877 F.Supp. 30, 32 (D.D.C. 1995) (citing *Scherer v. Laborers' Int'l Union of N. Am.,* 746 F.Supp. 73, 84 (N.D.Fla.1988)). "A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money." *Id.*

■ The plaintiffs concede that conversion claims cannot be predicated on the misappropriation of money. Pls' Opp'n to C.A.'s Mot. at 11; Pls.' Opp'n to D.A.'s

lated the CPPA, including the fact that Charles Antcliff failed to inform the plaintiffs that David Antcliff had twice been convicted of felonies for misappropriating funds and that David Antcliff frequently took advantage

of clients in his business dealings. Pls.' Reply to C.A.'s Mot. at 9–10. Charles Antcliff does not challenge these allegations in his papers and thus the Court finds it unnecessary to spend time reviewing them either.

Mot. at 9; *see Curaflex,* 877 F.Supp. at 32. However, that is exactly what the plaintiffs' complaint clearly states, *i.e.,* that their conversion claim is based upon their transfer of money by way of cash and checks to the defendants. *See* Compl. ¶¶ 67–78. Thus, the plaintiffs' conversion claim cannot be maintained. In an attempt to salvage the claim, the plaintiffs allege that the complaint states that the defendants converted the plaintiffs' personal property, namely, through the removal of appliances, tools, and architectural plans. Pl.'s Opp'n to C.A.'s Mot. at 11; Pls.' Opp'n to D.A.'s Mot. at 9–10. The plaintiffs reference two paragraphs in the fact section of their complaint, which state: "David Antcliff directed his work crew to remove to Michigan a new refrigerator and new wall oven purchased by and delivered to the [p]laintiffs in Washington D.C." Compl. ¶ 42. And, "David Antcliff and Julie Antcliff took original architectural plans and landscape designs form the [p]laintiffs and never returned them." Id. ¶ 43. These facts, however, are not at all alleged in the plaintiffs' conversion claim, which clearly relates solely to the conversion of money. It is clear that the plaintiffs are now, through their pleadings, attempting to amend their complaint to properly allege a claim of conversion. This tactic is clearly impermissible. *See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.,* 297 F.Supp.2d 165, 170 (D.D.C.2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Coleman v. Pension Benefit Guar. Corp.,* 94 F.Supp.2d 18, 24 n. 8 (D.D.C. 2000)); *see also Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996) (finding that allegations in a response to a

motion are not sufficient to amend the complaint). Accordingly, the Court is compelled to grant summary judgment[15] to the defendants on this count of the complaint.

**(E) The Breach of a Building Trust Claim**

The plaintiffs allege in their complaint that the defendants breached the trust of a building contract fund. Compl. ¶¶ 60–66. The defendants contend that they have been unable to find any caselaw in the District of Columbia that supports such a claim and therefore this claim should be dismissed. Def. C.A.'s Mem. at 10–11; Def. D.A.'s Mem. at 12. In response, the plaintiffs allege a violation of the Michigan Building Contract Fund Act ("Fund Act"), M.C.L.A. § 570.151 *et seq.* The Fund Act was promulgated to prevent construction funds from becoming property of the building contractor by creating a trust for the preservation of the construction funds, and by making the contractor the trustee of the construction funds with fiduciary responsibilities to the contractor's employees and the property owner. *Huizinga v. United States,* 68 F.3d 139, 144 (6th Cir.1995). However, other than alleging that the defendants were Michigan residents when they received payments from the Calvettis for the renovations, the plaintiffs fail to provide any legal support for the proposition that the Michigan statute applies in this case. In fact, this Court has been unable to identify any legal authority that supports the proposition that the Michigan statute has extraterritorial application. Thus, absent such a showing, the plaintiffs have not demonstrated that the statute creates a cause of

---

**15.** Because the Court is dismissing the plaintiffs' conversion claim on the basis that the plaintiffs have failed to properly allege the claim in their complaint, it really does not

matter whether judgment is entered pursuant to either Rule 56(c), Rule 12(b)(6), or 12(c), as a review of the complaint is all that was needed for the Court to render its decision.

action for the renovation of homes in the District of Columbia performed by Michigan contractors. Therefore, the defendants are also entitled to summary judgment [16] on this count of the complaint. *See Lasley v. Georgetown Univ.*, 842 F.Supp. 593, 596 (D.D.C.1994) (granting defendants motion to dismiss because plaintiffs had no legal basis for claim).[17] Moreover, nowhere in the plaintiffs' complaint do they allege that this claim is based upon the Michigan Builder's Trust Act. Again, it appears that the plaintiffs are trying to improperly amend their complaint through allegations advanced in their opposition, which they cannot do. *See Arbitraje Casa de Cambio, S.A. de C.V.*, 297 F.Supp.2d at 170.

### (F) Punitive Damages

Under District of Columbia law, punitive damages are normally available only in actions arising from intentional torts. *See, e.g., Jemison v. Nat'l Baptist Convention, U.S.A., Inc.*, 720 A.2d 275, 285 n. 9 (D.C.1998) ("In the District of Columbia, with rare exceptions, punitive damages are available only for intentional torts"); *Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C.1988) ("[p]unitive damages are available in actions for intentional torts..."). The basic purpose of punitive damages is to deter and punish. *Robinson*, 535 A.2d at 907. Such damages are not based on actual damages, but rather are based upon the intent in which the wrong was committed. *Id.* To succeed on a claim for punitive damages arising from an intentional tort, the plaintiff must establish that the tortious act was committed with an " 'evil motive, actual malice, deliberate violence or oppression' or for 'outrageous conduct in willful disregard for another's rights.' " *Id.* at 906. (internal citations omitted). "The requisite state of mind need not (and usually cannot) be proven by direct evidence, but may be inferred from all the facts and circumstances of the case." *Id.* (citations omitted). "Once the necessary malice is established, the amount of punitive damages is left to the jury's discretion." *Id.* (citations omitted). Additionally, "punitive damages are generally not recoverable in the District of Columbia for breach of contract, but 'in certain narrowly defined circumstances, where breach of contract merges with, and assumes the character of, a wilful tort ... punitive damages may be assessed.' " *Den v. Den*, 222 A.2d 647, 648 (D.C.1966) (citations omitted).[18]

16. Both defendants again put forth the same argument regarding this claim, therefore, this Court is able to again afford David Antcliff the benefit of the evidence presented to the Court by Charles Antcliff and accordingly review his claim under the standard applicable to summary judgment motions. *See supra* page 98. Moreover, the plaintiffs are not prejudiced by this action, because they put forth virtually identical legal and factual arguments on this point in response to both motions. Pls.' Opp'n to C.A.'s Mot. at 11; Pls.' Opp'n to D.A.'s Mot. at 10.

17. Despite asking this Court to apply a Michigan law, the plaintiffs ask this Court to apply the law of the District of Columbia for their other counts, including the CPPA, a District statute. The Court cannot understand why the plaintiffs would only allege a violation of Michigan law in this count, but in no other, since all the counts are based on the same events.

18. The defendants argument that the plaintiffs' request for punitive damages should be dismissed because they pled the claim for punitive damages in a separate count of the complaint is without merit. Def.'s D.A. Mem. at 10. Although the plaintiffs acknowledge that it may have been inappropriate for the complaint to plead punitive damages as a separate cause of action, they argue that they are nevertheless entitled to an award of punitive damages. Pls.' Opp'n to C.A.'s Mot. at 12. This Court has found many cases where punitive damages have been pled as a separate claim and cannot conclude this tactic

Both Charles and David Antcliff assert that the plaintiffs have failed to allege facts or introduce evidence that would support an award for punitive damages. Def. C.A.'s Mem. at 15; Def. D.A.'s Mem. at 14. Neither defendant, however, provides any citation to the record to support their argument that the Court should deny punitive damages in this case. The plaintiffs contend, however, that the facts that support their claim of fraud and breach of contract can support a finding for an award of punitive damages. Pls.' Opp'n to C.A.'s Mot. at 12.

 As to Charles Antcliff, this Court has already concluded that the plaintiffs have failed to satisfy their burden to establish fraud, specifically, that there are no facts in the record to support a finding of intent to defraud. *See* supra pages 99–101. Therefore, there can be no punitive damages for the fraud claim since it has now been dismissed. Moreover, because the plaintiffs' fraud claim against Charles Antcliff cannot be maintained, neither can the plaintiffs' claim for punitive damages based on the alleged contractual breach. As noted above, punitive damages are not available in conjunction to a breach of contract claim unless the breach assumes the character of a willful tort. *Den,* 222 A.2d at 648. In this case, the plaintiffs appear to allege that their breach of contract claim merges with and assumes the characteristic of fraudulent conduct for the purpose of assessing whether they are entitled to recover punitive damages. Pls.' Opp'n to C.A.'s Mot. at 12. However, the District of Columbia Court of Appeals recently concluded that a "jury's rejection of the claim of fraud eliminates the argument that the breach of contract assumed the character of a willful tort." *Bragdon v.*

*Twenty–Five Twelve Associates, Ltd. P'ship,* 856 A.2d 1165, 1173 (D.C.2004). The situation is no different here. The plaintiffs have failed to meet their burden of demonstrating the commission of a willful tort by Charles Antcliff, and therefore, they have no basis for recovering punitive damages for the alleged breach of the contract by Charles Antcliff. Thus, Charles Antcliff's motion for summary judgment as to the claim for punitive damages must be granted.

 David Antcliff also argues that the facts do not warrant an award of punitive damages against him either. Def.'s D.A. Mem. at 14. However, because the Court has concluded that the fraud count should not be dismissed as to David Antcliff, *see* supra page 101, the foregoing analysis does not apply to him either. Additionally, because David Antcliff has not produced any evidence to support his argument, nor any reference to other evidence presented to the Court by any other party in the case, his motion on the claim of punitive damages must be construed as one for judgment on the pleadings. Under this standard of review, if the allegations in the complaint, if proven, would provide a basis for recovery, this Court must deny the motion. *Haynesworth,* 820 F.2d at 1253. Thus, the Court must determine whether, based solely on the allegations in the complaint, the plaintiffs have made a sufficient showing to deny the motion.

As noted above, punitive damages can be awarded for an intentional tort after a showing of, for example, evil motive, actual malice or outrageous conduct. *Robinson,* 535 A.2d at 907. In this case, the Court has already concluded that the plaintiffs claim of fraud, an intentional tort, survives

---

warrants the denial of an award of punitive damages. *See, e.g., Hendel v. World Plan Exec. Council,* 705 A.2d 656, 669 n. 1 (D.C.

1997); *Dalo v. Kivitz,* 596 A.2d 35, 37 (D.C. 1991).

David Antcliff's dismissal motion. Additionally, the complaint alleges sufficient facts, which if proven true, could merit a jury inferring the requisite state of mind. For example, the complaint states the defendants performed renovation work without a proper contractor's license. Compl. ¶ 96. In addition, the complaint states that after abandoning the building sites without completing the work, the defendants continued to engage in fraudulent behavior that caused the plaintiffs further financial harm. *Id.* These allegations, if proven true, could warrant a jury inferring that the defendants actions were committed with actual malice and an evil motive. This finding would be permissible because the jury could infer that the defendants agreed to perform the work knowing that David Antcliff was not qualified to do it and that he abandoned the work sites knowing that he had caused the plaintiffs economic harm, which continued due to further acts perpetrated by the defendants after the properties were abandoned. Therefore, this Court must reject David Antcliff's argument regarding the punitive damages claim.

### IV. *Motion to Strike the Plaintiffs' Expert Report*

### (A) Standard of Review

Federal Rule of Civil Procedure 26(a)(2)(B) addresses the requirements for the disclosure of expert testimony. The Rule provides that a party's required disclosures shall include:

> with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony ... a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore the data or other information

considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 states that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court has assigned to "trial judges the task of ensuring that the expert's testimony rests on reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In order for the court to permit an expert witness to testify, it must be clear that the expert witness is "qualified as an expert by knowledge, skill, experience, training, or education..." *Gaydar v. Sociedad Instituto Gineco–Quirurgico y Planificacion*, 345 F.3d 15, 24 (1st Cir.2003); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (stating that under *Daubert*, the court must ensure that the expert testimony is both relevant and reliable). An individual

may be deemed an expert based on "intense practical experience" in the particular field. Lohrenz v. Donnelly, 223 F.Supp.2d 25, 35–36 (D.D.C.2002). However, the court may reject as unreliable expert testimony that is based on "subjective belief or unsupported speculation." Groobert v. President and Directors of Georgetown College, 219 F.Supp.2d 1, 6 (D.D.C.2002) (citing Daubert, 509 U.S. at 590, 113 S.Ct. 2786). In performing the gatekeeping function, the District Court must assess the ability of the expert witness to "assist the trier of fact to understand the evidence or determine ... [the] fact in issue." Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 124 F.3d 252, 259 (1st Cir.1997).

**(B) Legal Analysis**

Defendant David Antcliff moves to strike the expert testimony of Daniel A. Smith on the grounds that Mr. Smith is not a qualified contractor in the District of Columbia and that the expert report upon which the plaintiff relies is not based on "articulable facts." David Antcliff's Response to Plaintiffs' Supplement Expert Report ("Defs. Resp. to Supp.") at 1–2.[19] The plaintiffs seek to designate Mr. Smith as an expert in general contracting, and in particular, home renovation work. Memorandum of Points and Authorities in Opposition to Motion to Strike Expert Report ("Pls.' Opp'n to Strike") at 4. Specifically, the plaintiffs seek to offer as evidence Mr. Smith's opinion concerning the value and quality of work performed on the Calvetti's Washington, D.C. homes by the defendants. Id. According to the expert report submitted pursuant to Rule 26, Mr. Smith's training includes, "working on framing unfinished rooms, installation of drywall, kitchen and bathroom fixtures, plumbing, electrical work, HVAC work, cabinets, flooring and carpeting, windows and doors, concrete, home additions, roofing and painting." Expert Report of Daniel A. Smith ("Exp. Report") at 1–2. Further, Mr. Smith's supplemental expert report indicates that he retains a Class A contractor's license in Virginia, and is the sole proprietor of "Daniel A. Smith, General Contractor." Plaintiffs Supplemental Rule 26(a)(2) Disclosure of Expert Witness at 1 ("Pls.' Supp. Report"). Mr. Smith notes that he has been the proprietor of a contracting businesses for over twenty years. Exp. Report at 1.

■ David Antcliff first argues that the witness is not qualified to render an expert opinion because he lacks a contractor's license to practice in the District of Columbia. Defs.' Resp. to Supp. at 1. He further contends that Mr. Smith's lack of a District of Columbia contractor's license

---

**19.** Defendant David Antcliff in his first motion to strike also alleges that the expert report does not comply with Federal Rule of Civil Procedure 26(a)(2) due to the lack of information regarding publications of the expert witness, cases in which he may have testified in the past, the date of retention, the time devoted to the creation of the expert report, and what documents may have been used by the expert to render an opinion. Motion of David Antcliff to Strike Plaintiffs' Expert Report at 2. David Antcliff further contends that the witness is not qualified to render his opinion because the report is devoid of, among other things, his age, education, and training; the name of his company; where it is qualified to do business; where it retains a license; and the type of license the witness has. Id. at 3. Now that the plaintiffs have submitted a supplemental expert report, David Antcliff only contends that Mr. Smith is not a qualified expert because he does not have a District of Columbia contractor's license, and the supplemental expert report upon which the plaintiff relies is not based upon "articulable facts." Defs.' Resp. to Supp. at 1–2. Thus, it appears that David Antcliff has abandoned his other contentions in light of the supplemental filing.

alone disqualifies him as an expert witness because the Court, in accepting witness' testimony, would be sanctioning a violation of the law. *Id.* Courts frequently admit the testimony of experts even if the expert is not licensed to practice in the jurisdiction in which the court sits. *Cf. Plywood Property Assoc. v. Nat'l Flood Ins. Program*, 928 F.Supp. 500, 508 (D.C.N.J.1996) (holding that "prior qualifications as expert witness, specialized degrees, licenses, publications in field, while all commendable, are not required to be possessed by every witness acting as expert."); *Dickerson v. Cushman, Inc.*, 909 F.Supp. 1467 (D.C.Ala. 1995) (emphasizing that "[i]n general, the fact that an expert does not have a degree or license in his or her professed specialty goes to weight of his or her testimony rather than its admissibility"). In fact, other district courts have clearly stated that a "license is not a prerequisite to expert testimony under the Federal Rules." *Malbrough v. State Farm Fire and Cas. Co.*, 1996 WL 565819 *2 (E.D.La. Sept.27, 1996). Moreover, Rule 702 permits testimony of technical and other specialized knowledge. Thus, the lack of "[s]tate licensing requirements do not automatically bar testimony by an expert witness in federal court—the expertise of the witness is measured by 'knowledge, skill, experience, training or education.'" *Id.* (citations omitted). These cases are analogous to the situation here, and this Court sees no reason not to follow their reasoning. And Mr. Smith's lack of a contractor's license in the District of Columbia is therefore not a *per se* disqualifier. While having a license would lend credence to his qualifications, *id.*, his testimony would nonetheless be admissible so long as he has sufficient knowledge and experience to render an expert opinion. Mr. Smith clearly satisfies these requirements. Mr. Smith has owned home renovation contracting businesses for over twenty years.

Exp. Report at 1. Furthermore, he has a Class A contractor license issued by the Commonwealth of Virginia and his company is located in that jurisdiction. Pls.' Supp. Report at 1. Additionally, Mr. Smith posits that he is "very familiar with building codes" and has "worked on or overseen almost every aspect of home renovation work." Exp. Report at 1–2. Mr. Smith's initial and supplemental reports clearly satisfy the relevance and reliability components of expert testimony. And his "intense practical experience" clearly makes him an expert in the home improvement field. *See Lohrenz*, 223 F.Supp.2d at 35–36.

■ David Antcliff also seeks to have Mr. Smith's expert report stricken because he believes that his report is based on mere generalizations, and not "articulable facts." Defs. Resp. to Supp. at 2. He maintains that the expert report is replete with generalizations, but few specifics. *Id.* Specifically, he references general statements from Mr. Smith's report such as, "I saw a lot of unfinished and poorly done work" to bolster this argument. *Id.* However, after a careful review of Mr. Smith's expert report, this Court cannot agree with the defendant's position. The expert report states that at one of the Calvetti properties, Mr. Smith "had to finish repairing wood trim around the front door that had been removed," and "at the roof, [he] had to redo the freeze trim that had been poorly covered with a piece of aluminum." Exp. Report at 2. And at the other Calvetti property, Mr. Smith claims that he "had to tear out drywall to expose and redo electrical work that did not meet code, and [he] found electrical boxes that had been covered by kitchen cabinets, which is against building codes." *Id.* at 3. These statements provide specific descriptions of the work that was performed at the Calvetti properties. Further, these

representations are based, in part, on Mr. Smith's review of documents, photographs, videotapes, and on personal observations he made after he was hired to finish the work on the properties. *Id.* at 2. The fact that Mr. Smith was able to view the properties first hand and provide specific examples of the quality of the work that had been performed by the defendants indicates that his opinion is not based on mere guess work or conjecture. Consequently, the defendant's motion to strike the expert witness report must be denied.

#### IV. *Conclusion*

For the reasons set forth in the opinion, this Court grants in part and denies in part both Charles Antcliff's and David Antcliff's motions for summary judgment. Additionally, this Court denies David Antcliff's motion to strike the plaintiffs' expert report.